UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEDDY J. SAYE, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>NIO INC., BIN LI and WEI FENG,<br><br>     Defendants. | Case No.  1:22-cv-07252-VSB |
| TARAS CEGLIA BOHONOK, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>NIO INC., BIN LI and WEI FENG,<br><br>     Defendants. | Case No.  1:22-cv-07666-VSB |

REPLY MEMORANDUM OF LAW: (1) IN SUPPORT OF MOTION OF IRA ZOHN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT........................................................................................................................... 4

I.      *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff
        Appointment Stage....................................................................................................... 4

II.     Sordo and Siddiqui Are an Improper Attorney-Assembled Group .................................. 7

III.    Sordo's Options Trading Renders Him Inadequate ............................................................ 9

IV.     Lyons Has Not Incurred a Larger Loss Than Zohn Under a *Dura*-derived Methodology 10

CONCLUSION...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)..................................................................................................................10

*Blitz v. AgFeed Indus.*,
2012 U.S. Dist. LEXIS 49849 (M.D. Tenn. Apr. 10, 2012)...................................................2, 4

*Chahal v. Credit Suisse Grp. AG*,
18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21,
2018) ...........................................................................................................................................1

*Cohen v. Luckin Coffee Inc.*,
1:20-cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647 (S.D.N.Y. June 12, 2020) ..................2, 7

*Cook v. Allergan PLC*,
2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ............................................... *passim*

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
20 Civ. 5865, 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020)..............................3, 9

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)......................................................................................................... *passim*

*Espinoza v. Whiting*,
No. 4:12cv1711 SNLJ *et al.*, 2013 U.S. Dist. LEXIS 6227 (E.D. Mo. Jan. 16,
2013) .................................................................................................................................3, 4, 10

*Fialkov v. Celladon Corp.*,
2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015).........................................................5

*Goldberger v. PXRE Grp., Ltd.*,
Nos. 06 Civ. 3410 *et al.*, 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30,
2007) ...........................................................................................................................................8

*Haideri v. Jumei Int'l Holding, Ltd.*,
No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4,
2020) ...........................................................................................................................................8

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ...............................................................................................5

*In re Watchguard Sec. Litig.*,
2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ............................................4, 5, 7

*Juliar v. Sunopta Inc.*,
    2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009) ........................................................... 5

*Jurkowski v. MolyCorp, Inc.*,
    No. 13 Civ. 5697 (PAC), 2014 U.S. Dist. LEXIS 200771 (S.D.N.Y. Apr. 2,
    2014) ....................................................................................................................................... 9

*Khunt v. Alibaba Group Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ..................................................................................... 8

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016) ..................................................................................... 5

*Micholle v. Ophthotech Corp.*,
    17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ....................... 3, 9

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238 (Nov. 13, 2017) .......................... 1

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
    256 F.R.D. 620 (E.D. Wis. 2009) ............................................................................................ 4

*Siegel v. The Boston Beer Co.*,
    21-CV-7693 (VSB) *et al.*, 2021 U.S. Dist. LEXIS 239143 (S.D.N.Y. Dec. 14,
    2021) ....................................................................................................................................... 8

*Tecku v. Yieldstreet, Inc.*,
    20 Civ. 7327 (VM), 2022 U.S. Dist. LEXIS 150575 (S.D.N.Y. Aug. 22, 2022) .................. 3, 8

**Statutes**

17 C.F.R. §240.10b-5 ..................................................................................................................... 10

15 U.S.C. §78j(b) ............................................................................................................................. 5

15 U.S.C. § 78u-4 ................................................................................................................. *passim*

Movant Zohn[1] respectfully submits this reply memorandum of law in support of his motion for consolidation, appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 30); and in opposition to the competing motions of: (i) Sordo and Siddiqui (Dkt. No. 27); and (ii) Michael Lyons ("Lyons") (Dkt. No. 20).[2]

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can *only* be rebutted by proof that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, as discussed at length in Zohn's opposition brief, Zohn is the movant who clearly possesses the largest financial interest in this litigation, having incurred losses of approximately ***$1.98 million*** in connection with his Class Period purchases of NIO securities. *See*, *e.g.*, *Chahal v. Credit Suisse Grp. AG*, 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss); *Nurlybaev v. ZTO Express (Cayman) Inc.*, 17-CV-06130 (LTS)(SN), 2017 U.S. Dist. LEXIS 187238, at *3 (Nov. 13, 2017) (same).

The two competing movants, Sordo and Siddiqui (jointly) and Lyons, argue that Zohn has overstated his losses by failing to calculate losses consistently with the principles articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) and that any

---

[1] All capitalized terms herein are defined in Zohn's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 32, 41.

[2] Initially four other putative Class members—Prakash Sambath ("Sambath"), Gary Darland ("Darland"), Arthur White ("White"), and Juan Herreramoro Gomez ("Gomez")—also filed motions for appointment as Lead Plaintiff. Dkt. Nos. 12, 16, 23, 33. Each of these movants subsequently either withdrew their motions or filed notices stating their non-opposition to the competing motions. *See* Dkt. No. 37-40.

1

losses incurred prior to the alleged corrective disclosures in this litigation should not be considered in evaluating a movant's financial interest—the application of which methodology, conveniently enough, would significantly reduce Zohn's losses relative to those of the two competing movants. Yet *Dura* articulated a pleading standard, not an accounting methodology, and courts generally decline to assess financial interest with reference to the principles articulated in *Dura* at this stage of the litigation. *See*, *e.g.*, *Cook v. Allergan PLC*, 2019 U.S. Dist. LEXIS 51962, at *9 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, 2012 U.S. Dist. LEXIS 49849, at *12 (M.D. Tenn. Apr. 10, 2012). Here, by the time that Grizzly Research published a report on June 28, 2022, alleging that NIO had significantly inflated its net income through sales to a related party, NIO's stock price had already fallen $39.89 per share, or 63.48%, over the course of the preceding year, from its Class Period high of $62.84 on June 28, 2021 to close at $22.95 per share on June 27, 2022, the last trading session before publication of the Grizzly Research report on June 28, 2022. This strongly suggests that information related to NIO's inflation of its net income through sales to a related party was gradually leaking into the market even before Grizzly Research published its report. Given the likelihood of such leakage, the Court should not disregard the significant losses that Zohn incurred prior to the alleged corrective disclosures in assessing his financial interest in this litigation.

Separate and apart from the appropriate methodology for calculating Zohn's losses, the competing movants Sordo and Siddiqui are ineligible for appointment as Lead Plaintiff because they are an improper, attorney-assembled group, the appointment of which would contravene the PSLRA's intent to curb lawyer-driven litigation and ensure that control of securities class actions remained in the hands of investors, not their counsel. *See*, *e.g.*, *Cohen v. Luckin Coffee Inc.*, 1:20-

2

cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647, at *9 (S.D.N.Y. June 12, 2020) (denying motion by "random assemblage" of investors that "not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them."); *Tecku v. Yieldstreet, Inc.*, 20 Civ. 7327 (VM), 2022 U.S. Dist. LEXIS 150575, at *6-7 (S.D.N.Y. Aug. 22, 2022) ("Courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation.") (collecting cases).

Finally, Sordo individually is further ineligible for appointment because the fact that he traded ***exclusively*** in NIO options renders him atypical under Rule 23 and subjects him to unique defenses. *See*, *e.g.*, *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 20 Civ. 5865, 2020 U.S. Dist. LEXIS 242969, at *10-11 (S.D.N.Y. Dec. 28, 2020); *Cook v. Allergan PLC*, 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019); *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *23-24 (S.D.N.Y. Mar. 13, 2018). Sordo's options trading creates a non-speculative risk that issues specific to options trades but wholly irrelevant to a Class comprised of common stock investors—*e.g.*, strike prices, duration, maturity, and volatility—will become a focus of this litigation, to the detriment of his ability to prosecute the Class's fraud claims.

Even assuming *arguendo* that the Court were to apply a *Dura*-derived methodology, Lyons still would not have incurred a larger loss than Zohn because Zohn retained more shares of NIO stock (16,700) than Lyons (15,143) at the end of the Class Period, and thus more shares of NIO stock that were damaged when the Company's stock price fell by $2.03 per share following the corrective disclosure of July 11, 2022. Under such a methodology, Zohn's losses would be approximately $33,901 ($2.03 x 16,700 shares), compared to Lyons' losses of $30,740.29 ($2.03 x 15,143 shares). *See*, *e.g.*, *Espinoza v. Whiting*, No. 4:12cv1711 SNLJ *et al.*, 2013 U.S. Dist.

3

LEXIS 6227, at *8 (E.D. Mo. Jan. 16, 2013) ("The *Dura* loss is equal to the number of shares times the price drop.").

For the foregoing reasons, Zohn respectfully requests that the Court grant his motion in its entirety and deny the competing motions of Sordo and Siddiqui and Lyons.

## ARGUMENT

**I.      *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff Appointment Stage**

Both Sordo and Siddiqui and Lyons claim that Zohn has significantly "overstated" his losses "because he suffered almost all . . . of his losses before the alleged corrective disclosures in this action." Dkt. No. 43 at 7; *see also* Dkt. No. 42 at 2-3. Rather than calculating the movants' respective Class Period losses on a simple LIFO basis, Sordo and Siddiqui and Lyons instead urge the Court to employ a *Dura*-derived loss-causation methodology that, conveniently, would significantly reduce Zohn's losses relative to those of the competing movants by disregarding any losses incurred prior to the alleged corrective disclosures. *Id.*

Courts generally do *not* employ a loss-causation methodology premised on *Dura* principles in assessing financial interest at the lead plaintiff appointment stage of PSLRA actions. *See*, *e.g.*, *Allergan*, 2019 U.S. Dist. LEXIS 51962, at *9 (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Blitz*, 2012 U.S. Dist. LEXIS 49859, at *12 (M.D. Tenn. Apr. 10, 2012) (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *In re Watchguard Sec. Litig.*, 2005 U.S. Dist. LEXIS 40923, at *14-15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009).

4

*Dura* does not provide an accounting methodology. Rather, the case merely articulates a pleading standard for securities fraud claims alleging violations of Section 10(b) of the Exchange Act—namely, that "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*, 544 U.S. at 346. In *Watchguard*, the court expressly declined to look to *Dura* in assessing the financial interest of a Lead Plaintiff movant, explaining its reasoning as follows:

> [The movant's] citation to the discussion of securities class action damages in *Dura* . . . is inapposite. The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation. The Supreme Court recognized, as does this court, that numerous factors may affect the price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6.

A review of NIO's stock chart during the Class Period, alongside the allegations in the Complaints in the Related Actions, illustrates why calculation of financial interest with reference to the pleading standard articulated in *Dura* is inappropriate at this stage of the litigation. In assessing financial interest for the purposes of Lead Plaintiff appointment, courts routinely consider whether there was "substantial leakage of [defendants'] misconduct prior" to the primary corrective disclosure alleged. *Juliar v. Sunopta Inc.*, 2009 U.S. Dist. LEXIS 58118, at *2 (S.D.N.Y. Jan. 30, 2009). *See also In re Gentiva Sec. Litig.*, 281 F.R.D. 108 (E.D.N.Y. 2012); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471 (S.D.N.Y. 2016) ("a plaintiff['s] theory of 'loss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements' where the partial disclosure 'somehow reveals to the market that a defendant's prior statements were not entirely true.'" (quoting *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008)); *Fialkov v. Celladon Corp.*, 2015 U.S. Dist.

LEXIS 192311, at *15 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis where there were partial corrective disclosures: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff.").

Here, a review of the Company's stock chart during the Class Period strongly suggests that the fraud premium varied through the Class Period, presumably as a result of, *inter alia*, gradual leakage into the market of information regarding NIO's alleged use of related party sales to inflate its income, prior to the detailed disclosure of the extent and impact of NIO's malfeasance in the Grizzly Research report published on June 28, 2022.



As the chart above illustrates, after peaking at a Class Period high of $62.84 per share on June 28, 2021, NIO's stock price steadily declined by a staggering ***$39.89*** per share over the following twelve months, closing at $22.95 per share on June 27, 2022, the final trading day before the publication of the Grizzly Research report.  Thus, even prior to the first corrective disclosure

of June 28, 2022, it appears likely that news related to NIO's alleged inflation of its net sales through related party transactions was reaching the market.

The Lead Plaintiff ultimately appointed by the Court will file a Consolidated Amended Complaint, which will be based upon, *inter alia*, an in-depth review of all corrective disclosures and partial corrective disclosures regarding NIO's related party transaction, the Company's sales figures, and all other relevant subjects.  Considering that NIO's stock price fell, over twelve months, from a Class Period high of $62.84 per share on June 28, 2021 to close at $22.95 per share on June 27, 2022, even **before** the publication of the Grizzly Research report on June 28, 2022, the competing movants' advocacy for a *Dura*-derived loss causation methodology at this early stage of the litigation asks the Court to simply "guess about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff", *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6—which, again, is **not** the holding of *Dura*.  Zohn respectfully submits that the Court should decline this invitation and simply assess financial interest in terms of the competing movants' losses calculated on a LIFO basis.  *Allergan*, 2019 U.S. Dist. LEXIS 51962, at *7 (given that "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute", the court "cannot simply 'guess about the effect of . . . as yet-unknown factors in selecting a lead plaintiff'") (quoting *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6).

## II.    Sordo and Siddiqui Are an Improper Attorney-Assembled Group

As set forth in detail in Zohn's opposition brief, Sordo and Siddiqui's motion should be denied because Sordo and Siddiqui are precisely the type of attorney-created movant group that courts decline to appoint as Lead Plaintiffs, finding their appointment to be at odds with the purposes of the PSLRA.  *See*, *e.g.*, *Luckin Coffee Inc.*, 2020 U.S. Dist. LEXIS 103647, at *9 (denying motion by "random assemblage" of investors that "not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them.");

7

*Yieldstreet*, 2022 U.S. Dist. LEXIS 150575, at \*6-7 ("Courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation."); *Goldberger v. PXRE Grp., Ltd.*, Nos. 06 Civ. 3410 *et al.*, 2007 U.S. Dist. LEXIS 23925, at \*14 (S.D.N.Y. Mar. 30, 2007) (denying motion by proposed group that "shares only this lawsuit in common"); *Siegel v. The Boston Beer Co.*, 21-CV-7693 (VSB) *et al.*, 2021 U.S. Dist. LEXIS 239143, at \*16-17 (S.D.N.Y. Dec. 14, 2021) (declining motion to appoint investor group as lead plaintiff, citing "concern[s] about the lack of any pre-litigation relationship between the group members"); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (declining to appoint proposed group as lead plaintiff where they "effective admit[ted] to having no pre-litigation relationship[.]").

As Sordo and Siddiqui have conceded, the two movants have no relationship that pre-dates this litigation and were introduced by counsel solely to orchestrate their instant motion for appointment as Co-Lead Plaintiffs. *See* Dkt. No. 43 at 3-4 (acknowledging that "counsel introduced Sordo & Siddiqui to one another"). Even crediting the assertion that Sordo and Siddiqui "thoughtfully consider[ed] the merits of their grouping" (Dkt. No. 43 at 4), the fact remains that appointing these two movants as Co-Lead Plaintiffs would reward their counsel's efforts to secure a leadership role in this litigation by introducing unrelated individuals to one another in order to manufacture a larger financial interest that competing movants. Likewise, even if the Court were to adopt a *Dura*-derived loss calculation methodology in assessing the competing movants' losses, and on that basis agree with Sordo and Siddiqui's claim that "Sordo alone has the largest financial interest of any competing movant" (Dkt. No. 43 at 5), "it is only post hoc luck that any single member [of the Sordo-Siddiqui] group has a greater financial interest" than competing movants. *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at

8

*14 (N.D. Cal. Sept. 4, 2020). The fact that one group member may ultimately turn out to have incurred a larger loss than other movants cannot retroactively cure an improperly assembled investor group—which, again, is precisely what Sordo and Siddiqui are.

### III.   Sordo's Options Trading Renders Him Inadequate

Finally, Sordo is further disqualified from appointment as Lead Plaintiff because, having traded exclusively in NIO options during the Class Period, Sordo is atypical under Rule 23 as well as subject to unique defenses. Courts generally deny PSLRA lead plaintiff motions by options investors, finding that "factual issues unique to [the movant] 'would likely threaten to become the focus of the litigation'". *Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10-11 (quoting *Andrada v. Atherogenics, Inc.*, No. 05 Civ. 00061, 2005 U.S. Dist. LEXIS 6777, at *14 (S.D.N.Y. Apr. 19, 2005)). *See also Allergan*, 2019 U.S. Dist. LEXIS 51962, at *7 ("[t]he appointment of [an options investor] as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'") (quoting *In re Elan Corp. Sec. Litig.*, No. 08 Civ. 08761 (AKH), 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 11, 2009)); *Ophthotech*, 2018 U.S. Dist. LEXIS 41120, at *23-24 (same); *Jurkowski v. MolyCorp, Inc.*, No. 13 Civ. 5697 (PAC), 2014 U.S. Dist. LEXIS 200771, at *8 (S.D.N.Y. Apr. 2, 2014) (same). Here, Sordo, an investor who traded *solely* in options, as opposed to common stock, during the Class Period, seeks to represent a Class that will consist in large measure of common stockholders. In addition to making Sordo highly atypical of the absent Class members, his options trading also creates a non-speculative risk that issues relevant to Sord's options trades but *irrelevant* to most class members—*e.g.*, strike prices, duration, maturity, and volatility—will become a focus of the litigation. Indeed, given that options are not as widely traded as stock, Defendants are likely to aggressively litigate the issue of whether NIO options traded in an efficient market, seeking to

deprive Sordo of the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that, in an efficient market, "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.  Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action."  *Basic*, 485 U.S. at 247.  There is no reason to saddle the Class with a representative who, in the best-case scenario, will be forced to devote considerable time and energy to litigating these and other questions unique to him and irrelevant to the rest of the Class.

## IV.  Lyons Has Not Incurred a Larger Loss Than Zohn Under a *Dura*-derived Methodology

Finally, even assuming arguendo that the Court were to assess the competing movants respective losses by application of a *Dura*-derived methodology for loss calculation, Zohn would still have incurred a larger loss than Lyons because Zohn retained more shares of NIO stock (16,700) than Lyons (15,143) at the end of the Class Period.  Accordingly, applying the kind of *Dura*-based methodology for which Lyons (as well as Sordo and Siddiqui) have advocated, Zohn, holding 16,700 shares of NIO stock that each fell in value by $2.03 per share following the corrective disclosure of July 11, 2022, would have incurred a total monetary loss of approximately $33,901 following the final revelation of the Defendants' fraud.  Holding only 15,143 shares that each fell in value by $2.03 per share, Lyons thus clearly would have incurred a lesser loss of only $30,740.29.  *See*, *e.g.*, *Espinoza*, 2013 U.S. Dist. LEXIS 6227, at *8 ("The Dura loss is equal to the number of shares times the price drop.").

### CONCLUSION

For the foregoing reasons, Zohn respectfully requests that the Court issue an Order granting his motion in all respects and denying the competing motions.

Dated:  November 14, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Ira Zohn and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Ira Zohn*

11