UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                                     :

TEDDY J. SAYE,                                        :

                                  Plaintiff,      :

                                                         :               22-CV-7252 (VSB)
                - against -                    :

                                                          :

NIO INC., et al.,                                       :

                                  Defendants.  :

-----------------------------------------------------------X
                                                          :

TARAS CEGLIA BOHONOK,            :

                                Plaintiff,     :               22-CV-7666 (VSB)

                - against -                    :               **OPINION & ORDER**

                                                         :

NIO INC., et al.,                                       :

                                Defendants.  :

-----------------------------------------------------------X

Appearances:

Gregory Bradley Linkh
Glancy Prongay & Murray LLP
New York, NY
*Counsel for Plaintiff Teddy J. Saye, Movant Michael Lyon*

Joseph Alexander Hood, II
Thomas Henry Przybylowski
Jeremy Alan Lieberman
Pomerantz LLP
New York, NY
*Counsel for Plaintiff Taras Ceglia Bohonok, Movant Ira Zohn*

Daniel Patrick Chiplock
Lieff Cabraser Heimann & Bernstein, LLP
New York, NY
*Counsel for Movant Prakash Sambath*

Adam M. Apton
Levi & Korsinsky, LLP
New York, NY
*Counsel for Movant Arthur White*

James Milligan Wilson , Jr
Faruqi & Faruqi, LLP (NYC)
New York, NY
*Counsel for Movant Gary Darland*

Joseph R. Seidman
Bernstein Liebhard, LLP
New York, NY
*Counsel for Movants Javier Rodriguez Sordo, Mohammad Siddiqui*

Melissa Ann Fortunato
Bragar Eagel & Squire, P.C.
New York, NY
*Counsel for Juan Herreramoro Gomez*

Scott D. Musoff
Judith Flumenbaum
Michael Charles Griffin
Robert Alexander Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
New York, NY
*Counsel for Defendant NIO Inc.*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiffs bring two securities fraud class action lawsuits against NIO Inc. ("NIO") and certain of its officers and directors. These actions (collectively, the "NIO Actions") allege that NIO and its officers violated Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as the United States Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act. (Saye

2

Compl. ¶ 9; Bohonok Compl. ¶ 9.)[1]

Before me are motions from seven movants seeking (1) consolidation of the actions, (2) appointment of lead plaintiff, and (3) approval of lead counsel. Because the NIO Actions set forth substantially identical questions of law and fact, movants' motions to consolidate are GRANTED. Because Dr. Mohammad Siddiqui has a large financial interest in the litigation and appears to fulfill the threshold adequacy requirements of Federal Rule of Civil Procedure 23, Dr. Mohammad Siddiqui's motion to be appointed lead plaintiff and for approval of his selection of lead counsel is GRANTED. The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

## I. Factual and Procedural History[2]

### A. *The Complaints*

On August 25, 2022, Plaintiff Teddy J. Saye ("Saye") filed a class action complaint (the "Saye Action") against NIO, as well as its Chief Executive Officer Bin Li and its Chief Financial Officer Wei Feng (collectively, "Individual Defendants"), alleging that NIO and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by misleading investors about NIO's revenue. (*See* Saye Compl.) Essentially, Saye claims that NIO share prices fell after a Grizzly Research report alleged that NIO had "inflated its net income by about 95% through sales to a related party, Wuhan Weineng Battery Asset Co. ('Weineng')." (*Id.* ¶ 3; *see also id.* ¶¶ 4–8.)

The same day that he filed his complaint, Saye published a notice of the complaint on

---

[1] "Saye Compl." refers to Plaintiff Teddy J. Saye's complaint filed August 25, 2022 in case 22-CV-7252, (Saye Action Doc. 1), and "Bohonok Compl." refers to Plaintiff Taras Ceglia Bohonok's complaint filed September 8, 2022 in case 22-CV-7666, (Bohonok Action Doc. 1).

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

3

*Business Wire* in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(A)(i). (*E.g.*, Saye Action Doc. 14-1.) The notice advised putative class members that they had 60 days from the date of the notice to move the Court to be appointed as lead plaintiff of the litigation. (*See id.*)

A few weeks later, on September 8, 2022, Plaintiff Taras Ceglia Bohonok filed a class action complaint (the "Bohonok Action") against Defendants. (*See* Bohonok Compl.) The Bohonok Complaint is virtually identical to the Saye Complaint, except that Bohonok alleges that "[t]he Class Period begins on August 20, 2020, when the Company issued a press release announcing the establishment of Weineng," (Bohonok Compl. ¶ 19), whereas Saye alleges that "[t]he Class Period begins on March 1, 2021," when "NIO announced its fourth quarter and full year 2020 financial results in a press release," (Saye Compl. ¶ 19). Each complaint names the exact same Defendants. (*Compare* Saye Compl. ¶¶ 14–17 *with* Bohonok Compl. ¶¶ 14–17.)

### B. *Consolidation and Lead Plaintiff Motions*

Seven plaintiffs or groups of plaintiffs have filed motions requesting consolidation of the NIO Actions, appointment of lead plaintiff, and approval of lead counsel. Before me are the following:

1. Prakash Sambath's motion to consolidate the NIO Actions, to appoint himself as lead plaintiff, and for approval of Lieff, Cabraser, Heimann, & Bernstein, LLP as lead counsel. (Saye Action Doc. 12.)

2. Arthur White's motion to consolidate the NIO Actions, to appoint himself as lead plaintiff, and for approval of Levi & Korsinsky, LLP as lead counsel. (Saye Action Doc. 16.)

3. Michael Lyon's motion to consolidate the NIO Actions, to appoint himself as lead

plaintiff, and for approval of Glancy Prongay & Murray LLP as lead counsel. (Saye Action Doc. 20.)

4. Gary Darland's motion to consolidate the NIO Actions, to appoint himself as lead plaintiff, and for approval of Faruqi & Faruqi, LLP as lead counsel. (Saye Action Doc. 23; Bohonok Action Doc. 15.)

5. Javier Rodriguez Sordo's and Dr. Mohammad Siddiqui's (together, the "Sordo-Siddiqui Group") motion to consolidate the NIO Actions, to appoint themselves as lead plaintiff, and for approval of Bernstein Liebhard LLP as lead counsel. (Saye Action Doc. 27.)

6. Ira Zohn's motion to consolidate the NIO Actions, to appoint himself as lead plaintiff, and for approval of Pomerantz LLP as lead counsel. (Saye Action Doc. 30.)

7. Juan Herreramoro Gomez's motion to consolidate the NIO Actions, to appoint himself as lead plaintiff, and for approval of Bragar Eagel & Squire, P.C. as lead counsel. (Saye Action Doc. 33.)

In response to the above-mentioned motions, Sambath, Darland, White, and Herreramoro each filed notices of non-opposition acknowledging that they do not possess the largest financial interest. (Saye Action Docs. 37–40.) On November 7, 2022, Zohn, Lyon, and the Sordo-Siddiqui Group each filed an opposition to competing motions. (Saye Action Doc. 41 ("Zohn Opp."); Saye Action Doc. 42 ("Lyon Opp."); Saye Action Doc. 43 ("Sordo-Siddiqui Group Opp.").) On November 14, 2022, Zohn, Lyon, and the Sordo-Siddiqui Group each filed a reply. (Saye Action Doc. 44 ("Zohn Reply"); Saye Action Doc. 45 ("Lyon Reply"); Saye Action Doc. 46 ("Sordo-Siddiqui Group Reply").) Defendants have not taken a position on the merits of

these motions.

    **II.    Discussion**

        **A.    *Consolidation***

            **1. Applicable Law**

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). Under Federal Rule of Civil Procedure 42(a), when separate actions before a court involve a common question of law or fact, a court is empowered to "consolidate the actions." Fed. R. Civ. P. 42(a)(2). Essentially, Rule 42 is "invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted). It is well-settled that Rule 42 gives a district court broad discretion to consolidate legal actions *sua sponte*. *Id.* "[T]he consent of the parties is not required." *Tucker v. Kenney*, 994 F. Supp. 412, 415 (E.D.N.Y. 1998). Indeed, where judicial economy is concerned, a district court will generally consolidate actions. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation."); *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("Considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." (quoting *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970))).

            **2. Application**

The Bohonok Complaint appears identical to the Saye Complaint, except for an adjustment to the class period. (*Compare* Saye Compl. *with* Bohonok Compl..) The Saye Action and Bohonok Action involve identical questions of law and fact. All seven movants

6

agree that the actions should be consolidated, (Saye Action Docs. 12, 16, 20, 23, 27, 30, 33; Bohonok Action Doc. 15), and Defendants have not filed any opposition.  I find that consolidation is warranted, and movants' motions for consolidation are GRANTED.  As previously ordered, within seven days of the appointment of a lead plaintiff, the parties shall file a proposed schedule for any consolidated or amended complaint, and any answer or motion in response.  (Saye Action Doc. 11.)

### B. *Appointment of Lead Plaintiff*

#### 1. **Applicable Law**

The procedures set forth in the PSLRA govern the appointment of lead plaintiff in securities class actions.  The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (internal citation omitted); *see also* H.R. Rep. No. 104-369, at 32–33; H.R. Rep. No. 104-369, at 32–33 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731–32; *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998).  Before its enactment, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)).  Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff

class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z–1(a)(3)(B)(i).

### a. Notice and Filing Requirements

As an initial matter, the PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service" within twenty days from the date that the complaint is filed. *Id.* at § 77z-1(a)(3)(A)(i)–(ii). The notice must inform the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff . . . ." *Id.* "[T]he Court has an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA, that is, encouraging the most adequate plaintiff . . . to come forward and take control of the litigation." *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001); *see also Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845 (DG)(MMH), 2022 WL 3654646, at *3 (E.D.N.Y. Aug. 25, 2022).

Courts strictly adhere to the sixty-day rule, and any motion filed after the sixty-day period will not be considered except under rare circumstances. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (calling the sixty-day deadline a "strict deadline"); *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) ("Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published.").

b. <u>Largest Financial Interest</u>

i. *Aggregating Financial Interest*

Although the PSLRA permits a "person or group of persons" to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I), it does not define "group of persons" or whether these persons must be related, *see In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The PSLRA does not, unfortunately, define what constitutes an appropriate candidate. . . . [T]he Act does not specify whether the 'members' must be related in some fashion in order to qualify as an appropriate lead plaintiff group."). Courts permit unrelated investors to move for appointment as lead plaintiff, and aggregate their financial interests, on a case-by-case basis. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *eSpeed,* 232 F.R.D. at 99. Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class. *See Varghese*, 589 F. Supp. 2d at 392; *see also In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("[T]o enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers."). Courts have considered factors such as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." Courts will reject a group of unrelated investors if the group "has not provided sufficient evidence that it will function cohesively, and has only provided 'conclusory assurances' that call into question whether it can manage th[e] litigation effectively." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (quoting *Pipefitters Local No. 636 Defined Benefit*

9

*Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011)).  Where a court rejects a group of unrelated investors, it may consider the largest shareholder within the group for appointment as lead plaintiff.  *Varghese*, 589 F. Supp. 2d at 394 ("While the Court rejects the aggregated [plaintiff group's] motion as lead plaintiffs, the Court may consider . . . the largest shareholder . . . individually, as if he had moved to be appointed as lead plaintiff alone.").

        ii.  *Calculating Financial Interest*

In this District, courts use the four-factor test first adopted in *Lax v. First Merchants Acceptance Corp.*, when determining the party with the largest financial interest:  (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate financial losses suffered.  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997); *see, e.g.*, *Reitan*, 68 F. Supp. 3d at 395 (applying the *Lax* test); *Varghese*, 589 F. Supp. 2d at 394–95 (same); *eSpeed*, 232 F.R.D. at 100 (same); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (same).  Of the four factors, financial loss is considered the most significant factor.  *See Reitan*, 68 F. Supp. 3d at 395; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617 (RJH), 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006) ("The amount of financial loss is the most significant of the *Lax*-style elements.") (citation omitted).

Courts consider only recoverable losses when calculating financial loss for the purpose of selecting lead plaintiff.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *5 & n.6 (S.D.N.Y. Mar. 2, 2007).  In securities fraud cases, courts must consider only those losses that a plaintiff incurred after a misrepresentation is revealed to the public.  *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617–

18 (S.D.N. Y 2015); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 272 (S.D.N.Y. 2015); *see also Comverse*, 2007 WL 680779, at *5 ("[W]here (as here) it is clear from the face of the pleadings that most of [movant's] losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage."). Any losses incurred based on "in-and-out" trades—where an investor buys stock and sells it during the class period but before any disclosures—should not be considered. *See Topping*, 95 F. Supp. 3d at 618 ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include 'losses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.'" (quoting *Comverse*, 2007 WL 680779, at *4)). This is consistent with the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005), where the Court found that securities actions only provide recoveries for "economic losses that misrepresentations actually cause." Thus, any losses resulting from sales of shares before a company's misconduct is revealed are not considered for the purpose of loss calculation "because those losses cannot be proximately linked to the misconduct at issue." *Alibaba*, 102 F. Supp. 3d at 531 (quoting *Comverse*, 2007 WL 680779, at *4).

    c. <u>Rule 23</u>

The last requirement is that the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of a class certification." *eSpeed*, 232 F.R.D. at 102.  The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements.  *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *eSpeed*, 232 F.R.D. at 102.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50.  While the claim need not be identical, it must be substantially similar to the other members' claims.  *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In evaluating adequacy, courts have assessed factors such as:  (1) the size, available resources and experience of the proposed lead plaintiff, (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members."  *Blackmoss Investments, Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (citations omitted); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) ("While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting

the interests of the class.").

### 2. Application

#### a. Notice

The notice in this case satisfied the PSLRA requirements. (*See* Saye Action Doc. 14-1.) The notice informs investors of the pendency of the lawsuit—including its case caption—the class period, and the fact that investors "have 60 days from this notice to move the Court to serve as lead plaintiff." (*Id.*) *See* 15 U.S.C. § 77z-1(a)(3)(A)(i).

The notice was published on August 25, 2022, and all movants timely filed for appointment as lead plaintiff by October 24, 2022. (Saye Action Docs. 12, 16, 20, 23, 27, 30, 33; Bohonok Action Doc. 15.) Sambath, Darland, White, and Herreramoro have each withdrawn from consideration. (Saye Action Docs. 37–40.) Zohn, Lyon, and the Sordo-Siddiqui Group each maintain they are the presumptive lead plaintiff. (Zohn Opp.; Lyon Opp.; Sordo-Siddiqui Group Opp..)

#### b. Largest Financial Interest

Zohn claims the largest financial loss of $1,980,095. (Saye Action Doc. 32 ("Zohn Mem."), at 7; *see also* Doc. 34 ("Leiberman Decl.").) Sordo claims a financial loss of $998,751.18, and Siddiqui claims a financial loss of $657,902.32, for a total of $1,656,653.50. (Saye Action Doc. 29 ("Seidman Decl."), at Ex. C; *see also* Doc. 28 ("Sordo-Siddiqui Group Mem."), at 1.) Lyon claims a financial loss of $990,299.65. (Saye Action Doc. 21 ("Lyon Mem."), at 6; *see also* Doc. 21 ("Linkh Decl."), Ex. C.) Each movant argues the other movants' claimed losses should be discounted.

##### i. *Aggregating Financial Interest*

The Sordo-Siddiqui Group is composed of two plaintiffs. (*See* Seidman Decl. Ex. D.)

Sordo is an entrepreneur who manages a digital company and lives in Miramar, Florida. (*Id.* ¶ 3.) Dr. Siddiqui is a surgeon who lives in South Abington Township, Pennsylvania. (*Id.* ¶ 5.) Sordo has "been investing in the securities markets for over 10 years," and Dr. Siddiqui has "been investing in the securities markets for over 20 years." (*Id.* ¶¶ 3, 5.) Neither has moved to serve as lead plaintiff before. (*Id.* ¶¶ 4, 6.) Sordo and Dr. Siddiqui did not know each other prior to this litigation, but were introduced by their counsel, Bernstein Liebhard LLP ("Bernstein Leibhard"), whom they "independently contacted and retained." (*Id.* ¶ 7.) If appointed lead plaintiff, Sordo and Dr. Siddiqui agree "to actively manage the prosecution of the Action including reviewing documents, having joint calls, discussing significant developments, and participating in discovery and trial." (*Id.* ¶¶ 11.) Sordo and Dr. Siddiqui had one joint conference call and have exchanged contact information in anticipation of future calls. (*Id.* ¶ 8.) Sordo and Dr. Siddiqui have agreed that, in the event of disputes about litigation decisions, Dr. Siddiqui would defer to Sordo, since he has the larger financial interest. (*See id.* ¶ 13.)

The Sordo-Siddiqui Group's application is very similar to a motion I considered in *Siegel v. Bos. Beer Co., Inc.*, No. 21-CV-7693 (VSB), 2021 WL 5909133, at *6 (S.D.N.Y. Dec. 14, 2021). Indeed, in that case, the same firm, Bernstein Liebhard, represented a similar lead plaintiff group, and filed a similar declaration on behalf of the proposed plaintiffs. *See id.* I denied that group's motion to serve as lead plaintiff. *See id.* Under a parallel rationale, I find that the Sordo-Siddiqui Group is not a legitimate plaintiff group either. Crucially, Sordo and Dr. Siddiqui had no pre-litigation relationship. *See Varghese*, 589 F. Supp. 2d at 392. "If not for intervention by counsel, [Sordo and Dr. Siddiqui] never would have met, much less worked together." *Siegel*, 2021 WL 5909133, at *6. For that reason, I cannot trust that the Sordo-Siddiqui Group will "act collectively and separately from their lawyers." *Varghese*, 589 F. Supp.

14

2d at 393; *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (finding "no matter how experienced or sophisticated these plaintiffs may be," the group of unrelated plaintiffs "appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser for PSLRA purposes" (internal quotation marks omitted)).  Because the Sordo-Siddiqui Group "has not provided sufficient evidence that it will function cohesively, and has only provided conclusory assurances that call into question whether it can manage th[e] litigation effectively," I find the Sordo-Siddiqui Group is not a proper plaintiff group.  *Micholle*, 2018 WL 1307285, at *9 (internal quotation marks omitted).

Both Sordo and Dr. Siddiqui are willing to serve as a single lead plaintiff if necessary. (Seidman Decl. Ex. D ¶¶ 4, 6.)  Although I deny the Sordo-Siddiqui Group's motion to be appointed lead plaintiff, I still separately consider Sordo's and Dr. Siddiqui's motions individually.  *See Varghese*, 589 F. Supp. 2d at 394.

ii.     *Calculating Financial Interest*

Both the Sordo-Siddiqui Group and Lyon argue that Zohn overstated his financial interest.  (*See* Lyon Opp. at 2–3; Sordo-Siddiqui Group Opp. at 5–8; Lyon Reply at 2; Sordo-Siddiqui Group Reply at 4–5.)  Specifically, the Sordo-Siddiqui Group argues that "Zohn's claimed $1.9 million loss figure is wildly misleading because Zohn sold *98%* of his NIO stock *before* the two alleged corrective disclosures in these Actions, which were on June 28, 2022 and July 11, 2022."  (Sordo-Siddiqui Group Opp. at 1–2 (emphasis in original).)  The Sordo-Siddiqui Group cites *Dura* for the proposition that "plaintiffs alleging claims under Section 10(b) of the Exchange Act can only recover for losses suffered *after* an alleged corrective disclosure."  (*Id.* at 2 (emphasis in original) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345

15

(2005)).)  The Sordo-Siddiqui Group and Lyon disagree about the precise *Dura* loss calculations; however, they agree that when only considering losses suffered after an alleged corrective disclosure, Sordo suffered the largest loss, followed by Dr. Siddiqi, Lyon, and then Zohn.[3]

Zohn argues that "*Dura* articulated a pleading standard, not an accounting methodology," and that "courts routinely consider whether there was 'substantial leakage of misconduct prior' to the primary corrective disclosure alleged."  (Zohn Reply at 2 (quoting *Juliar v. Sunopta Inc.*, No. 08 CIV. 1070 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009)).  There are indeed some cases where courts have appointed lead plaintiffs who sold their shares "after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit."  *Juliar*, 2009 WL 1955237, at *2.  However, as a general matter, "losses that may have incurred before a company's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in the litigation."  *Topping*, 95 F. Supp. 3d at 617–18 (internal quotation marks omitted) (collecting cases).  Zohn argues that because the stock price declined over the course of the class period, "it appears likely that news related to NIO's alleged inflation of its net sales through related party transactions was reaching the market" "even prior to the first corrective disclosure of June 28, 2022."  (Zohn Reply at 6–7.)  However, Zohn relies on speculation and does not cite to credible evidence of such leakage.  Therefore, I find that Zohn's theory of "leakage" to be speculative and conclusory, not something tantamount to a "partial disclosure" such that Zohn's earlier losses could be proximately linked to the misconduct at issue.

---

[3] Lyon calculated that Sordo lost $1,103,291, Dr. Siddiqui lost $620,552, Lyon lost $609,177, and Zohn lost $576,780.  (Lyon Opp. at 3; Lyon Reply at 2.)  The Sordo-Siddiqui Group calculated that Sordo lost $998,751, Siddiqui lost $620,552, Lyon lost $601,249, and Zohn lost only $36,079.  (Sordo-Siddiqui Group Opp. at 6; Sordo-Siddiqui Group Reply at 5 & 5 n.4.)  Zohn argues that, "assuming arguendo that the Court were to apply a *Dura*-derived methodology," his losses would be $33,901 and Lyon's losses would be $30,740.29.  (Lyon Reply at 3–4.)

Considering only those losses that each potential lead plaintiff incurred after NIO's misrepresentation was revealed to the public, I find that both Zohn and Lyon allege smaller losses than Sordo and Dr. Siddiqui, and this takes them out of consideration for lead plaintiff.

### c. Otherwise Satisfying Rule 23

Sordo is the plaintiff with the largest financial loss by any measure, and therefore would be considered the presumptive lead plaintiff if he otherwise satisfied Rule 23. However, Sordo fails to satisfy Rule 23's typicality requirement because he traded exclusively in NIO call options. (*See* Seidman Decl. Ex. C (loss chart), Ex. D ¶ 3 ("As reflected in my Certification, I purchased NIO call options and suffered losses of over $998,000 in these investments as a result of the violations of the federal securities laws alleged in the Related Actions.")). Because options traders may "introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict," Sordo fails to satisfy Rule 23 and will not be appointed lead plaintiff. *See In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL1321167, at *2 (S.D.N.Y. May 11, 2009); *see also Micholle*, 2018 WL 1307285, at *9.

However, Dr. Siddiqui—the movant with the next largest financial interest—does satisfy the adequacy and typicality requirements of Rule 23. Because Dr. Siddiqui purchased NIO common stock between November 13, 2020, and January 24, 2022, he has claims "aris[ing] from the same conduct from which the other class members' claims and injuries arise." *Initial Public Offering*, 214 F.R.D. at 121. Given his significant financial losses and his more than 20 years' investing experience, I find that Dr. Siddiqui will "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Pirelli*, 229 F.R.D. at 417. Although Lyon and Zohn have challenged the Sordo-Siddiqui Group, no other movant has provided any proof that

17

Dr. Siddiqui as an individual would not be able to "fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, I find that Dr. Siddiqui should serve as lead plaintiff.

### C. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (citation omitted).

Dr. Siddiqui has selected Bernstein Liebhard. I have reviewed Dr. Siddiqui's filings in this case, as well as Bernstein Liebhard's resume, (*see* Siedman Decl. Ex. E), and I find that Bernstein Liebhard is highly experienced in securities litigation and is capable of adequately and effectively representing the class. Dr. Siddiqui's motion that Bernstein Liebhard be appointed lead counsel of the NIO Action is GRANTED.

## III. Conclusion

The motions for consolidation are GRANTED based on the similarity of the NIO Actions. Because I find that Dr. Siddiqui is the presumptive lead plaintiff and no other movants have rebutted that presumption. Moreover, Dr. Siddiqui has a substantial financial interest and meets the typicality and adequacy requirements of Rule 23; therefore, Dr. Siddiqui's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED. The remaining motions from Sordo, Lyon, Zohn, Sambath, Darland, White, and Herreramoro for appointment as lead plaintiff are DENIED.

The Clerk of Court is respectfully requested to terminate the pending motions. (Saye Action Docs. 12, 16, 20, 23, 27, 30, 33; Bohonok Action Doc. 15.) As previously ordered, within seven days of this Order, the parties shall file a proposed schedule for any consolidated or amended complaint, and any answer or motion in response. (Saye Action Doc. 11.)

SO ORDERED.

Dated: December 14, 2022
      New York, New York

                                                    _____
                                                    Vernon S. Broderick
                                                    United States District Judge