UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TEDDY J. SAYE, individually and on behalf  :  22-cv-7252 (VSB)
of all others similarly situated,      :

     :

         Plaintiff,    :

     :

        v.      :

     :

NIO INC., BIN LI, and WEI FENG,   :

     :

        Defendants.  :

     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

TARAS CEGLIA BOHONOK, individually  :  22-cv-7666 (VSB)
and on behalf of all others similarly situated,  :

     :

         Plaintiff,    :

     :

        v.      :   **Oral Argument Requested**

     :

NIO INC., BIN LI, and WEI FENG,   :

     :

        Defendants.  :

     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT NIO INC.'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................4

1.   NIO's Business and Investment in Weineng ........................................................................4

2.   Weineng's Corporate Structure............................................................................................6

3.   NIO's Accounting Treatment of Weineng............................................................................7

4.   The Grizzly Report and NIO's Independent Investigation ..................................................8

ARGUMENT................................................................................................................................10

I.    PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION...................10

      A.    Plaintiffs Admit NIO Disclosed All Relevant Information ...................................11

      B.    Plaintiffs' Disagreement with NIO's Accounting Treatment Is Insufficient.........11

            1.    Plaintiffs Fail To Allege That Weineng Is a NIO VIE Whose
                  Financials Were Required To Be Consolidated with NIO's......................12

                  (a)    Weineng Is Not a NIO VIE.............................................................12

                  (b)    Consolidation of Weineng's Financials Was Not Required ..........17

            2.    Plaintiffs Fail To Allege Revenue Collection Was Not Probable..............19

II.   PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER .............20

      A.    Plaintiffs Fail To Plead Motive and Opportunity To Commit Fraud....................20

      B.    Plaintiffs Fail To Plead Conscious Misbehavior or Recklessness........................21

      C.    The Alleged Facts Support a Far More Compelling Inference of No Fraud .........23

III.  PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ....................................................24

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Altayyar v. Etsy, Inc.*,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018)..................21

*In re AmTrust Financial Services, Inc. Securities Litigation*,
No. 17-CV-1545 (LAK), 2020 WL 2787117 (S.D.N.Y. Apr. 20, 2020)...........................11

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...............................................................................4, 10, 25

*In re Autodesk, Inc. Securities Litigation*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ...............................................................................14

*Central States, Southeast & Southwest Areas Pension Fund v. Federal Home Loan
Mortgage Corp.*,
543 F. App'x 72 (2d Cir. 2013) ........................................................................................24

*Cheng v. Canada Goose Holdings Inc.*,
No. 19-CV-8204 (VSB), 2021 WL 3077469 (S.D.N.Y. July 19, 2021).....................22, 23

*In re China XD Plastics Co. Ltd. Securities Litigation*,
No. 14-CV-05308 (GBD), 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016)........................15

*City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)...............................................................................21

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)...............................................................................................21

*Colbert v. Rio Tinto Plc*,
No. 17-CIV-8169 (AT) (DCF), 2022 WL 355400 (S.D.N.Y. Feb. 7, 2022)...............24, 25

*Diesenhouse v. Social Learning & Payments, Inc.*,
No. 20-CV-7436 (LJL), 2022 WL 3100562 (S.D.N.Y. Aug. 3, 2022).............................14

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JPMorgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)........................................................................................20, 21

*Fait v. Regions Financial Corp.*,
655 F.3d 105 (2d Cir. 2011)...............................................................................................12

*Fila v. Pingtan Marine Enterprise Ltd.*,
195 F. Supp. 3d 489 (S.D.N.Y. 2016)................................................................................24

*Gissin v. Endres*,
    739 F. Supp. 2d 488 (S.D.N.Y. 2010)..................................................................21

*Golla v. Neovasc, Inc.*,
    No. 22-361-CV, 2023 WL 2469770 (2d Cir. Mar. 13, 2023)...........................20

*Harris v. AmTrust Financial Services, Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)..............10, 19

*In re Iconix Brand Group, Inc.*,
    No. 15 CIV. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)....................22, 23

*Janbay v. Canadian Solar, Inc.*,
    No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................24

*In re L & L Energy, Inc. Securities Litigation*,
    908 F. Supp. 2d 1147 (W.D. Wash. 2012)..........................................................15

*Lehmann v. Ohr Pharmaceutical, Inc.*,
    830 F. App'x 349 (2d Cir. 2020) ......................................................................22

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)..............................................................................24

*In re Merrill Lynch & Co.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005) .........................4

*Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)................................................................10

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015)....................................................................................11, 12

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)..............................................................................24

*In re Philip Morris International Inc. Securities Litigation*,
    437 F. Supp. 3d 329 (S.D.N.Y. 2020), *appeal filed*, No. 21-2546 (2d Cir. Oct. 8,
    2021) ...............................................................................................................23

*In re PXRE Group, Ltd., Securities Litigation*,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Group
    Ltd.*, 357 F. App'x 393 (2d Cir. 2009)................................................................21

*Rotunno v. Wood*,
    No. 22-502, 2022 WL 14997930 (2d Cir. Oct. 27, 2022).....................................21

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019)......................................................................................10

*South Cherry Street, LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009)......................................................................................21

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
    No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) .........................22

*In re UBS AG Securities Litigation*,
    No. 07 CIV. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)......................................................................................22

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020).......................................................................12, 21

## OTHER AUTHORITIES

Jason Fernando, *Current Ratio Explained With Formula and Examples*, Investopedia
    (updated Mar. 23, 2023),
    https://www.investopedia.com/terms/c/currentratio.asp#toc-formula- .............................13

Defendant[1] NIO Inc. ("NIO" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Class Action Complaint (the "Complaint" or "AC")[2] pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").

## PRELIMINARY STATEMENT

This securities fraud action is premised on nothing more than Plaintiffs' subjective disagreement with Defendants' accounting judgments based on disclosed information. NIO has not restated any of the financial results that Plaintiffs challenge. To the contrary, NIO's accounting judgments were approved by its external auditor, reviewed by the U.S. Securities and Exchange Commission ("SEC"), and confirmed by an independent internal investigation led by the audit committee of NIO's Board of Directors. Still, Plaintiffs insist that NIO should have accounted differently for its investment in and business transactions with a related party called Wuhan Weineng Battery Asset Co., Ltd. ("Weineng"). Plaintiffs' allegations are not based on any accounting expertise (which they do not claim to have), or even on any consultation with an accountant (which they do not claim to have done). Instead, Plaintiffs merely parrot the unsubstantiated claims of a self-professed short seller, which, in turn, relied solely on information that NIO and Weineng already publicly disclosed. This falls far short of pleading securities fraud with particularity, and Plaintiffs' claims fail as a matter of law for multiple independent reasons.

---

[1] To NIO's knowledge, the other named Defendants have not been served.

[2] A true and correct copy of the Complaint is attached as Exhibit A to the Declaration of Robert A. Fumerton, dated May 1, 2023, exhibits to which are otherwise cited herein as "Ex. __." Pincites for all exhibits reference the original pagination at the bottom of the page, except for pincites to ECF No. 51-3, which reference the page number at the top of the page accompanying the ECF stamp. All internal quotation marks and citations are omitted, and all emphases in quotations are added, unless otherwise indicated.

NIO is a leading electric vehicle ("EV") company headquartered in China that designs, develops and sells EVs.  In August 2020, NIO announced that, together with three other companies, it had invested in Weineng, an independent battery asset company that leases EV batteries to car owners who subscribe to a Battery as a Service ("BaaS") program.  Through the BaaS program, consumers may purchase EVs without a battery from NIO for a lower initial purchase price and lease swappable and upgradable batteries from Weineng for a monthly subscription fee.  As Plaintiffs admit, Weineng operated in this manner throughout the Class Period and added value to NIO and its shareholders.  Nonetheless, in June 2022, short seller Grizzly Research LLC ("Grizzly") published a report (the "Grizzly Report") accusing NIO of creating Weineng to improperly "pull forward" revenue and boost margins.  The market reacted with a collective shrug, with NIO's American Depositary Share ("ADS") price falling only 2.5% that day.  Shortly thereafter, NIO announced the commencement of an independent investigation into the Grizzly Report's allegations.  The investigation ultimately confirmed that the allegations were unsubstantiated.  Still, Plaintiffs rely on these same allegations to claim that (i) Weineng is a NIO Variable Interest Entity ("VIE") whose financials should have been consolidated with NIO's, and (ii) NIO improperly recognized revenue from Weineng that was likely uncollectible.  For several independently dispositive reasons, the Complaint fails to state a claim for securities fraud.

First, Plaintiffs fail to plead a material misrepresentation.  Plaintiffs admit that NIO disclosed all relevant information regarding Weineng.  Plaintiffs' disagreement with NIO's subjective accounting judgments based on that disclosed information cannot support a claim for securities fraud.  As an initial matter, Plaintiffs do not even attempt to plead facts showing that NIO did not sincerely believe that its accounting judgments were proper.  Moreover, Plaintiffs also fail to plead facts showing that NIO's accounting was objectively incorrect.  For example,

Plaintiffs' argument that Weineng is a VIE depends on conflating NIO's 19% ownership interest in Weineng with the revenue that NIO earns from its arm's length business transactions with Weineng. But the very GAAP rules that Plaintiffs cite exclude consideration of such revenue earned from arm's length business transactions. Plaintiffs also argue that NIO should not have recognized certain revenue from Weineng because collection was not probable. But Plaintiffs again ignore the applicable test (consideration of all facts and circumstances) and myopically focus only on Weineng's asset-to-liability ratio at one point in time. Critically, however, Plaintiffs do not allege that NIO ever had any issue collecting the revenue it was owed from Weineng.

Second, Plaintiffs fail to plead the requisite strong inference of scienter. Plaintiffs' allegations of motives are generally possessed by all corporate defendants—such as the desire to maintain profitability and increase the stock price—and are insufficient as a matter of law. Plaintiffs' other allegations of purported GAAP violations and generic references to Individual Defendants' corporate positions and knowledge of GAAP do not come close to pleading with particularity "a state of mind approximating actual intent" to defraud investors.

Third, Plaintiffs fail to plead loss causation. Plaintiffs allege two purported "corrective disclosures" that supposedly caused their losses, but neither "corrected" any prior alleged misrepresentation by NIO. The first, the Grizzly Report, simply revealed the short seller's subjective disagreement with NIO's accounting judgments based on already-public information. The second, NIO's announcement of the audit committee's investigation, revealed nothing about whether the Grizzly Report had merit (indeed, the investigation later concluded it did not).

For these separate and independent reasons, as explained further below, the Complaint should be dismissed in its entirety with prejudice.

**STATEMENT OF FACTS[3]**

**1.     NIO's Business and Investment in Weineng**

NIO is a leading Chinese EV company that designs, develops and sells EVs.  (AC ¶ 41.) Founded in 2014, NIO went public on the New York Stock Exchange in 2018.  (*Id*.)  As of December 31, 2020, NIO's total revenues were RMB 16,257,933,000 ($2,491,637,000), and its gross profit was RMB 1,873,419,000 ($287,113,000).  (Ex. B, NIO 2020 Annual Report at 4.) Contrary to Plaintiffs' claim that NIO was facing "a severe liquidity crisis" prior to Weineng's founding in August 2020 (AC ¶ 2), as of June 30, 2020, NIO's ratio of current assets to current liabilities was approximately 1.16.  (Ex. C, NIO 2Q 2020 Press Release at 17.)  As Plaintiffs concede, a current ratio of greater than 1.00 presumptively indicates that a "company has the financial resources to remain solvent."[4]  (AC ¶ 112.)

In August 2020, NIO disclosed that the Company, together with three business partners, sought to establish a new independent battery asset company, Weineng, to run a BaaS program. (*Id.* ¶ 9; *see* Ex. B, NIO 2020 Annual Report at 60.)  Under the BaaS program, buyers of NIO's EVs could purchase their vehicles without batteries for lower initial purchase prices, and separately lease from Weineng swappable and upgradable batteries for monthly subscription fees.  (Ex. D, NIO 2021 Annual Report at 21; AC ¶ 42.)  Prior to Weineng's founding, NIO operated a similar in-house battery payment arrangement.  (AC ¶¶ 43-44.)  The new BaaS model under Weineng

---

[3]   The facts set forth herein are drawn from the allegations in the Complaint and documents attached as exhibits or incorporated into the Complaint by reference, matters of which judicial notice may be taken, and documents integral to the complaint. *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005).  The Court may also consider "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[4]   As of 2Q 2020, NIO's total current assets were RMB 15,088,886,000, and its total current liabilities were RMB 13,049,073,000.  (Ex. C, NIO 2Q 2020 Press Release at 17.)  Hence, its current ratio was approximately 1.16. Plaintiffs use the terms "asset-to-liability ratio" and "current" ratio interchangeably throughout the Complaint. (*See* AC ¶ 112.)  For the avoidance of doubt, relying on Plaintiffs' own source, Defendants refer only to the "current ratio," which is measured by dividing total current assets by total current liabilities.  (*See id.* ¶¶ 111-12.)

helped "eliminate the users' concerns regarding [] battery degradation" and "provide [] flexible upgrade services to the user," all with the purpose of "convert[ing] more gasoline car users to EVs." (Ex. E, NIO 3Q 2020 Earnings Call Tr. at 10.)  NIO succeeded in achieving this objective, as the launch of the new BaaS model was followed by new EV orders that "broke the historic record and exceeded all expectations." (*Id.* at 5.)

Under the new BaaS model, when a BaaS user buys a NIO vehicle, NIO sells an EV battery to Weineng (at a commercially reasonable price through arms-length negotiations).  (Ex. F, NIO Hong Kong Prospectus at 220.)  By paying a monthly subscription fee to Weineng, the BaaS user subscribes to the desired battery for his new EV.  (*Id.* at I-29; Ex. G, Weineng ABN Prospectus at 91.)  After NIO sells the battery to Weineng, Weineng retains ownership and control of the battery (AC ¶ 69), and "[w]hen the batteries are deemed to be at the end of their useful life for use[] on electric vehicles," Weineng may "seek to generate additional revenue by maximizing the residual value of such batteries," such as by selling the batteries for other purposes like "energy storage at wind or solar power stations," or by recycling them to "recover valuable chemical materials" or to be "reused during the manufacturing process for batteries."  (Ex. F, NIO Hong Kong Prospectus at 222.)

As part of this collaboration between the two companies, NIO provides technical services to Weineng for a fee (*id.* at I-29), and Weineng secures property insurance and comprehensive product liability insurance for the batteries it leases (Ex. G, Weineng ABN Prospectus at 91).  NIO guarantees BaaS users' monthly subscription fee payments up to a set amount in case of default, which "shall not be higher than the accumulated service fees [NIO] receive[s] from" Weineng. (AC ¶ 154.)  Weineng can also request that NIO track down or lock a defaulting user's battery. (*Id.* ¶ 172.)  The arrangement between NIO and Weineng is not exclusive; rather, the "long-term

5

goal" is for Weineng to operate as "an open platform where more automakers can participate and provide services for . . . different brands of electric vehicles based on the BaaS model." (Ex. H, Phate Zhang, *What the Four Investors Involved in Investing in NIO Battery Asset Firm Might Be Thinking About*, CN Tech Post (Aug. 21, 2020) at 4 (cited at AC ¶ 67); *see also* BaaS Launch Event Video[5] at 32:00-32:40 ("Of course, other car companies are also welcomed to partner with Weineng.  It is open.").)

## 2.    Weineng's Corporate Structure

When Weineng was created in August 2020, each of its four investors contributed RMB 200 million and held 25% equity in Weineng.  (Ex. F, NIO Hong Kong Prospectus at 234; AC ¶ 99.)  NIO disclosed the identities of the three other investors.  (AC ¶ 154.)  In December 2020, NIO disclosed that it helped raise RMB 640 million in additional capital for Weineng and encouraged further investment from new shareholders, diluting NIO's equity in Weineng to 13.9%. (Ex. B, NIO 2020 Annual Report at 60.)  Weineng was also able to raise additional capital for itself from existing shareholders and new investors, further diluting NIO's equity ratio to 13.2% (rising to 19.8% at the end of 2021).  (Ex. F, NIO Hong Kong Prospectus at 236; Ex. D, NIO 2021 Annual Report at 21; AC ¶ 98.)  In April 2022, Weineng raised RMB 400 million through an offering of Asset-Backed Notes ("ABN"), for which it put up a portion of its contractual rights under its BaaS lease agreements as collateral.  (Ex. G, Weineng ABN Prospectus at I; AC ¶ 92.) As of December 31, 2021, Weineng's equity investment from shareholders totaled RMB 1.97 billion, a significant portion of its total assets.  (Ex. I, NIO Response to SEC at 16.)

Under Weineng's articles of incorporation, Weineng's "shareholders, as a group, are entitled to decision making rights through their shareholder voting powers.  In addition, the

---

[5]    *NIO BaaS Launch Event*, NIO.com (Aug. 20, 2020), https://www.nio.com/news/nio-launches-battery-service.

shareholders' designated directors are empowered to govern and direct [Weineng's] operations, including its most significant activities which impact its economic performance." (Ex. I, NIO Response to SEC at 17.) NIO appoints one of the nine directors on Weineng's Board. (Ex. F, NIO Hong Kong Prospectus at I-41; AC ¶ 99.) The Weineng shareholders' expected losses and rights to returns are proportional to their respective equity interests. (*Id.*; *see* AC ¶ 130.) NIO warned its own investors that it "only [has] limited control over [the] business operations" of Weineng and "cannot guarantee" Weineng's quality of service. (AC ¶¶ 136, 143, 154; Ex. F, NIO Hong Kong Prospectus at 45.)

Weineng was a resounding success. For the nine months ending September 30, 2021, Weineng generated revenue of RMB 191.7 million and net profit of RMB 37 million. (Ex. F, NIO Hong Kong Prospectus at 222.) As of September 30, 2021, Weineng held 40,053 battery assets. (Ex. G, Weineng ABN Prospectus at 92.)

### 3.    NIO's Accounting Treatment of Weineng

NIO's financial statements are prepared in accordance with U.S. GAAP. (AC ¶¶ 158, 194.) Its registered public accounting firm, PricewaterhouseCoopers Zhong Tian LLP, audited the Company's financials for 2020 through 2022, and issued unqualified audit opinions for NIO's annual reports for those periods. (Ex. B, NIO 2020 Annual Report at 149; Ex. D, NIO 2021 Annual Report at 171; Ex. J, NIO 2022 Annual Report at 169.)

At all times during the Class Period, NIO disclosed Weineng as a related party (AC ¶ 100; *see* Ex. B, NIO 2020 Annual Report at F-50; Ex. D, NIO 2021 Annual Report at F-51; Ex. J, NIO 2022 Annual Report at F-55) and reported its income from Weineng for provision of services, sales of goods, acceptance of R&D and maintenance service, and sales of raw material, property and equipment, as well as the amounts due to and from Weineng. (Ex. B, NIO 2020 Annual Report

at F-51–53; Ex. D, NIO 2021 Annual Report at F-51–54; Ex. J, NIO 2022 Annual Report at F-56–58.)  Further, NIO disclosed that it recognizes revenue for battery sales to Weineng at the time of battery delivery, which occurs when a newly purchased vehicle is delivered to its new owner.  (AC ¶ 172; Ex. F, NIO Hong Kong Prospectus at I-29.)  When NIO provides technical services to Weineng for the batteries in exchange for monthly service charges, that revenue is recognized over the period during which the services are rendered.  (Ex. F, NIO Hong Kong Prospectus at I-29.)

**4.    The Grizzly Report and NIO's Independent Investigation**

On June 28, 2022, short seller Grizzly Research LLC published a report accusing NIO of, among other things, using Weineng fraudulently "to inflate its revenues and boost margins" by improperly pulling-forward the revenue from sales of batteries to Weineng.  (Ex. K, Grizzly Report at 2-3.)  On the day of the Grizzly Report's publication, NIO's stock closed at $22.36, down only 2.5% from the previous day's close.  (Ex. L, NIO Historical Stock Price Chart at 12.)

Importantly, the Grizzly Report explicitly admits that certain Grizzly associates, clients or investors "***have a short position in the securities of [NIO]*** . . . , ***and therefore will realize significant gains in the event that the prices of NIO Inc.'s securities decline***."  (Ex. K, Grizzly Report at 35.)  The disclaimer also notifies readers that Grizzly "conducted research and analysis based on ***public information in a manner [that] any person could have done*** if they had been interested in doing so," and that investors "can publicly access any piece of evidence cited in this report or that we relied on to write this report."  (*Id.* at 34.)

On the night the Grizzly Report was released, NIO flatly denied the allegations and announced that the Board and audit committee were considering appropriate next steps to best protect the interests of NIO's shareholders:

> The report is without merit and contains numerous errors, unsupported speculations and misleading conclusions and interpretations regarding information relating to

the Company.  The Company's board of directors, including the audit committee, is reviewing the allegations and considering the appropriate course of action to protect the interests of all shareholders.  The Company will make additional disclosures in due course consistent with the requirements of applicable rules and regulations of the Securities and Exchange Commission, the New York Stock Exchange, The Stock Exchange of Hong Kong Limited (the "SEHK") and the Singapore Exchange Securities Trading Limited (the "SGX-ST").

(Ex. M, NIO Press Release at 2; AC ¶ 115.)

NIO also "reiterate[d] its continued and unwavering commitment to maintaining high standards of corporate governance and internal control, as well as transparent and timely disclosure in compliance with applicable rules and regulations." (AC ¶ 118.)  The audit committee engaged an international law firm and a well-regarded forensic accounting firm to review the Grizzly Report's allegations.  (*Id.*)  About a month later, NIO announced that the review was substantially complete and that "the Independent Committee has concluded that these allegations were not substantiated." (*Id.* ¶ 124.)

On September 22, 2022, almost three months after the Grizzly Report, the SEC asked NIO to provide additional information about certain matters disclosed in the Company's 2021 Annual Report filed on Form 20-F.  (Ex. N, SEC Comments.)  Among other things, the SEC asked for further information about NIO's equity interest in Weineng and whether Weineng should be considered a VIE under Accounting Standards Codification ("ASC") 810.  (*Id.* at 3.)  NIO responded to the SEC with, among other things, its step-by-step analysis explaining why Weineng did not qualify as a VIE.  (Ex. I, NIO Response to SEC at 14-17.)  On November 29, 2022, the SEC responded that it had "completed [its] review of [NIO's] filing." (Ex. O, SEC Letter.)  As Plaintiffs admit, the SEC has not taken any further action against NIO.  (AC ¶ 133.)

**ARGUMENT**

To state a claim under Section 10(b), Plaintiffs must allege, among other things: (1) a material misstatement or omission, (2) scienter and (3) loss causation. *See Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019). Plaintiffs' claims are subject to heightened pleading requirements under Rule 9(b) and the PSLRA, which require that Plaintiffs plead the circumstances constituting the fraud with particularity. *ATSI*, 493 F.3d at 99.

## I.    PLAINTIFFS FAIL TO PLEAD A MATERIAL MISREPRESENTATION

Relying on unsubstantiated claims in the Grizzly Report, Plaintiffs allege that NIO should have consolidated Weineng's financials with its own as a VIE and should not have recognized revenue from Weineng that Plaintiffs do not dispute was ultimately collected. (AC ¶ 3.) Courts in this Circuit have repeatedly held that there is a "particular need for close scrutiny" where plaintiffs base securities fraud claims on unsubstantiated attacks by short sellers, who have "an obvious motive to exaggerate the infirmities of the securities in which they speculate." *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020); *see also Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015) (dismissing complaint premised on allegations of fraudulent accounting practices based "almost entirely on a negative report published by a short seller that Lead Plaintiff concedes may have been wrong in certain respects and has been proven wrong in others by the passage of time"), *aff'd*, 649 F. App'x 7 (2d Cir. 2016). Here, Plaintiffs cannot allege a material misrepresentation because NIO disclosed the relevant information regarding Weineng, and Plaintiffs fail to plead that NIO's accounting judgments were objectively incorrect or not sincerely believed when made.

### A.   Plaintiffs Admit NIO Disclosed All Relevant Information

Plaintiffs do not allege that NIO omitted material information relating to Weineng or misrepresented any risks that later materialized or caused harm to investors. Indeed, Plaintiffs admit that NIO disclosed all relevant information about Weineng, including NIO's investments in Weineng (AC ¶¶ 9, 60, 99, 136, 172), its efforts to help encourage further investment in and financing for Weineng (*id.* ¶ 83), and the value that an independent battery asset company would add to NIO for the benefit of its shareholders, including by "strengthen[ing] NIO's bargaining power in the supply chain, further improv[ing] NIO's system efficiency, and push[ing] up corporate gross profit" (*id.* ¶¶ 60-61). NIO disclosed that it was "entitled to appoint one out of nine directors" to Weineng's Board and that it had "limited control over [Weineng's] business operations" (*id.* ¶¶ 99, 136, 143). NIO also disclosed the products and services it provides to Weineng and the relevant revenue recognition practices (*id.* ¶ 172), related-party transactions with Weineng, including income, revenues and amounts due (*id.* ¶¶ 150, 186), and the risks in connection with its contractual and business arrangements with Weineng, including its agreement to guarantee monthly customer defaults up to a certain amount (*id.* ¶¶ 136, 143, 154, 172, 192). Plaintiffs concede that NIO's partnership with Weineng increased revenues and created value for NIO's consumers and investors alike, and that Weineng was able to secure financing and maintain steady operations throughout the Class Period. (*Id.* ¶¶ 3, 78-97.)

### B.   Plaintiffs' Disagreement with NIO's Accounting Treatment Is Insufficient

Plaintiffs' remaining allegations fail because their mere disagreement with NIO's subjective accounting judgments is insufficient to state a claim, and, in any event, Plaintiffs cannot show such accounting judgments were objectively false. The securities laws do "not allow investors to second-guess inherently subjective and uncertain assessments." *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015). Often,

determining "which accounting principle applies and how it applies call for subjective judgment by the issuer or its auditor." *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2020 WL 2787117, at *1 (S.D.N.Y. Apr. 20, 2020). Here, Plaintiffs confirm that the accounting determinations at issue called for subjective judgments, including whether NIO had the "power to direct [Weineng's] activities that most significantly impact its economic performance," and whether, "consider[ing] all the facts and circumstances," it was "probable" that revenue from Weineng would be collectible. (AC ¶¶ 36, 39 & n.6.) These accounting judgments are opinions, which cannot support falsity unless Plaintiffs plead facts showing that they were "subjectively false – the speaker does not believe what he says – or objectively false – the speaker misrepresents or omits existing material facts in support of his belief." *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 224 (S.D.N.Y. 2020); *see also Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-12 (2d Cir. 2011). Plaintiffs do not even attempt to plead that NIO did not sincerely believe its accounting judgments were proper and, as demonstrated below, they fail to allege facts showing those judgments were objectively incorrect.

### 1.      Plaintiffs Fail To Allege That Weineng Is a NIO VIE Whose Financials Were Required To Be Consolidated with NIO's

#### (a)      Weineng Is Not a NIO VIE

Plaintiffs fail to allege particularized facts to establish that Weineng is a VIE. Under ASC 810, an entity is a VIE if: (i) the entity lacks sufficient equity at risk to finance its activities "without additional subordinated financial support provided by any parties"; (ii) the equity holders, as a group, lack the characteristics of a controlling financial interest; or (iii) "[t]he equity investors' voting rights are not proportional to the economics, and substantially all of the activities of the entity either involve or are conducted on behalf of an investor that has disproportionately few voting rights." (ECF No. 51-3 at 2; *see* AC ¶ 36.) Plaintiffs do not even attempt to argue that the

equity holders, as a group, lacked the characteristics of a controlling financial interest. Their attempts to show that Weineng was a VIE under factors (i) and (iii) fail.

First, Plaintiffs offer nothing but conclusory assertions in support of their claim that Weineng "lacked sufficient equity at risk to finance its activities without additional subordinated financial support." (AC ¶¶ 102, 105.) Indeed, Plaintiffs admit that Weineng successfully raised financing six times during the Class Period. (*Id.* ¶ 105.) Plaintiffs allege no facts to show how such financing constituted "additional subordinated financial support, which generally refers to variable interest that absorb some or all of an entity's expected losses." (*Id.*; *see* Ex. P, ASC 810-10-20.) Although Plaintiffs point out that NIO "agreed to provide guarantee to Weineng for the default in payment of monthly subscription fees from users"—which NIO clearly disclosed—they allege no facts indicating that such guarantees were a necessary condition to Weineng's financing. (AC ¶ 172.) Moreover, Plaintiffs confirm that NIO's "guarantee liability [was] immaterial." (*Id.*)

Plaintiffs also allege that Weineng had a "current[] ratio of only 0.36 as of December 31, 2021," which they claim indicates, "[i]n many cases" that a company "does not have the capital on hand to meet its short-term obligations *if they were all due at once*." (*Id.* ¶ 112; *see id.* ¶ 105.) But Plaintiffs do not allege that NIO had any reason to believe that Weineng's liabilities would become due all at once at any point during the Class Period, or any other reason or authority explaining why Weineng's current ratio should be considered in determining whether NIO had sufficient equity at risk to finance its activities. Indeed, their own source confirms that "because the current ratio at any one time is just a snapshot, it is usually not a complete representation of a company's short-term liquidity or longer-term solvency." (Jason Fernando, *Current Ratio Explained With Formula and Examples*, Investopedia (updated Mar. 23, 2023),

https://www.investopedia.com/terms/c/currentratio.asp#toc-formula-; *see* AC ¶ 112.) [6]  Thus, Plaintiffs fail to show that Weineng lacked sufficient equity at risk to finance its activities.

Second, Plaintiffs cannot show that Weineng was a VIE under the third prong, which requires that (i) NIO's voting rights are not proportional to its economic interest, and (ii) substantially all of Weineng's activities involved or were conducted on behalf of NIO.  (*See* ECF No. 51-3 at 10 (ASC 810-10-15-14(c) requires both conditions be met).)  Plaintiffs fail to show that NIO's voting rights are not proportional to its economic interest, *i.e.*, "not proportional to [its] obligations to absorb the expected losses of [Weineng], [its] rights to receive the expected residual returns of [Weineng], or both."[7]  (ECF No. 51-3 at 10 (quoting ASC 810-10-15-14(c)).)  Plaintiffs allege no facts that contradict NIO's disclosure to the SEC that "[a]ccording to the articles of incorporation of [Weineng], each shareholder's obligation to absorb the expected losses and rights to expected residual returns . . . are in proportion to the respective shareholder's equity interest."  (AC ¶ 130; *see* Ex. I, NIO Response to SEC at 17.)  As Plaintiffs acknowledge, the SEC has not taken any action against NIO since completing its review of NIO's accounting in November 2022.  (AC ¶¶ 130-33.)

---

[6]    Moreover, Plaintiffs' claim that Weineng's current ratio was 0.36 is based on calculations drawn from figures allegedly reported in an unspecified "Weineng Credit Report," which they fail to attach to the Complaint.  (*See* AC ¶ 111.)  Plaintiffs do not allege who authored the purported credit report, when it was published or for what purpose, what reporting periods were covered, whether it was prepared in accordance with GAAP, or what, if anything, Plaintiffs did to verify its accuracy.  This falls far short of the particularity required by Rule 9(b) and the PSLRA.  *See Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20-CV-7436 (LJL), 2022 WL 3100562, at *7 (S.D.N.Y. Aug. 3, 2022) ("Particularity means the who, what, where, when and how: the first paragraph of any newspaper story."); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("Rule 9 and the PSLRA require that plaintiffs provide details regarding how they obtained the reports, who produced the reports, and specifically what information the reports contained.").

[7]    GAAP defines a VIE's "expected losses" as "the expected negative variability in the fair value of its net assets exclusive of variable interests and not the anticipated amount or variability of the net income or loss."  (Ex. P, ASC 810-10-20.)  A VIE's "expected residual returns are the expected positive variability in the fair value of its net assets exclusive of variable interests."  (*Id.*)

14

Plaintiffs' methodology for calculating NIO's supposed "true economic interest" (*id.* ¶ 56) in Weineng is invented out of whole cloth and is inconsistent with ASC 810. Specifically, Plaintiffs claim that "NIO's indicated relative economic interest in Weineng as compared to other Weineng investors approximated 55%." (*Id.* ¶ 103.) That percentage is based on NIO's alleged economic interest being RMB 1,965,829,000, which Plaintiffs derived by adding RMB 402,072,000 in "Estimated Equity Interest in Weineng attributable to NIO" (*i.e.*, 19.8% of Weineng's alleged total "Shareholders' Equity" of RMB 2,030,668,000) and RMB 1,563,757,000 in "Receivables Due to NIO from Weineng" (*i.e.*, the "Amounts due from" Weineng reported in NIO's 2021 Annual Report). (*Id.*; *see* Ex. D, 2021 Annual Report at F-54.) In other words, Plaintiffs combine the value of NIO's *ownership interests in Weineng* with the revenue it derives from its *business transactions with Weineng*. Yet, ASC 810 explicitly defines economic interests as the ownership interests—*i.e.*, "obligations to absorb the expected losses of the legal entity, [the] rights to receive the expected residual returns of the legal, or both." (ECF No. 51-3 at 10 (quoting ASC 810-10-15-14(c)).) Worse still, Plaintiffs do not calculate any other investor's "economic interest" in the same manner or at all, exposing the conclusory nature of any claim they make about NIO's "*relative* economic interest in Weineng *as compared to* other Weineng investors." *See In re China XD Plastics Co. Ltd. Sec. Litig.*, No. 14-CV-05308 (GBD), 2016 WL 1241522, at *6 (S.D.N.Y. Mar. 23, 2016) (plaintiffs cannot plead falsity by comparing different sets of financial data, as "the missing . . . financials could close the gap" and "demonstrate that there is no discrepancy"); *In re L & L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d 1147, 1153 (W.D. Wash. 2012)

15

(no falsity where it is "virtually impossible to determine whether the comparisons [plaintiff] draws are apples-to-apples").[8]

Separately, Plaintiffs also fail to establish that "substantially all of Weineng's activities involved or were conducted on behalf of NIO." (AC ¶ 104.) Their claim that "NIO substantially ran Weineng's business" is unsupported by any particularized facts. (*Id.*) Plaintiffs do not dispute that NIO, as a 19.84% shareholder, was only "entitled to appoint one out of nine directors" to Weineng's Board. (*Id.* ¶¶ 74, 99.) Plaintiffs allege no facts to show how NIO's right to appoint a single seat on a nine-member board translates into the alleged power single-handedly to control or direct Weineng's operations. (*See* Ex. G, Weineng ABN Prospectus at 82-84 (noting all board resolutions must be agreed upon by either a majority of or all directors).) Nor do they allege that the NIO-appointed director held any managerial role at Weineng. (*See* AC ¶ 74.) Although Weineng's General Manager and Chief Operating Officer were "***former*** managers" at NIO (*see, e.g., id.* ¶ 75), the Plaintiffs do not allege that either individual was employed by Weineng and NIO at the same time.[9] Contrary to Plaintiffs' claim that Weineng "does not maintain, . . . control, or possess the battery assets it purchases from" NIO (*id.* ¶ 67), Plaintiffs acknowledge elsewhere that NIO recognizes revenue "when the control [of the battery asset] is transferred" to Weineng (*id.* ¶ 172; *see also id.* ¶ 69 ("[a]fter completing battery swaps, the charged batteries swapped on to BaaS users' vehicles are deemed to be owned by the Battery Asset Company")). And despite their repeated claim that NIO was Weineng's "only revenue source" (*id.* ¶¶ 58, 63), Plaintiffs make clear that Weineng generates revenue from "monthly payments from lease customers," *i.e.*, car owners who subscribe to the BaaS program (*id.* ¶ 11), and that Weineng's battery purchases were

---

[8]   Plaintiffs claim to source their numbers, once again, from the unspecified "Weineng Credit Report" (AC ¶ 103), which fail for the reasons explained above. (*Supra* n.6.)

[9]   Plaintiffs do not allege that NIO President Lihong Qin held any position at Weineng. (*See* AC ¶ 76.)

16

not determined by NIO, but by "customer demand" (*id.* ¶ 68).  Plaintiffs also allege no facts whatsoever in support of their claims that "NIO set the terms of the contracts with Weineng" or that NIO was the sole price-setter for batteries and the BaaS program.  (*Id.* ¶¶ 10, 64.)  Far from showing that NIO controlled Weineng, Plaintiffs confirm that while NIO and Weineng collaborate to serve their mutual customers in the ordinary course of business, each company maintained independent operations at all relevant times.[10]

(b)    <u>Consolidation of Weineng's Financials Was Not Required</u>

Even if Plaintiffs could establish that Weineng was a NIO VIE under ASC 810 (they cannot), they fail to show consolidation was necessary or appropriate.  Consolidation of a VIE's financials is warranted only if the reporting entity is "the VIE's 'primary beneficiary' . . . meaning it has both (a) the power to direct the entity's activities that most significantly impact its performance, and (b) the obligation to absorb potentially significant losses of the entity, or the right to receive potentially significant benefits from the entity."  (AC ¶ 36.)  Plaintiffs fail to show that either factor was met.

Plaintiffs fail to establish that NIO alone had the power to direct the activities that most significantly impact Weineng's performance.  As explained above, NIO only had the power to appoint one of Weineng's nine directors (*Id.* ¶ 99; *see* Ex. G, Weineng ABN Prospectus at 82-84), and Plaintiffs fail to show that NIO "install[ed] numerous overlapping senior managers," or that

---

[10]    Plaintiffs' theory that "Weineng's chief purpose was to serve NIO's interest" is undermined by several sources cited in the Complaint.  (AC ¶ 53.)  For example, during the BaaS Launch Event, NIO's CEO stated that "other car companies are also welcomed to partner with Weineng."  (BaaS Launch Event Video at 32:00-32:40.) Weineng's ABN Prospectus similarly disclosed that it aimed to "gradually begin to try to expand the source of power batteries to other OEM [original equipment manufacturer] users."  (Ex. G, Weineng ABN Prospectus at 92-93.)  Plaintiffs also misleadingly allege that NIO's CEO stated at the BaaS Launch Event that "NIO takes responsibility for the whole system including the battery asset management" and displayed two invoices for a vehicle and a battery, both of which were issued by a NIO subsidiary.  (AC ¶ 60.)  However, these statements and invoices referred to NIO's BaaS program that existed ***prior*** to Weineng's founding.  (*See* BaaS Launch Event Video at 21:48-23:15; *id.* at 25:55-27:35 (noting invoices related to purchases from July 31, 2020, prior to the August 2020 founding of Weineng).)

17

NIO directed or had the ability to direct any former NIO personnel who later became Weineng employees. (AC ¶ 107). Plaintiffs also allege no facts to show that NIO's efforts to help Weineng secure financing gave NIO the ability to direct Weineng's operations. (*See id.*)

Plaintiffs also cannot establish that NIO had the obligation to absorb potentially significant losses or the right to receive potentially significant benefits from Weineng—the second requirement for consolidation under ASC 810. As their own exhibit makes clear, in determining whether consolidation of a VIE's financials is required, "losses" and "benefits" exclude fees that "are compensation for services provided and are commensurate with the level of effort required to provide those services," where such services are governed by "terms, conditions, or amounts that are customarily present in arrangements for similar services negotiated at arm's length." (ECF No. 51-3 at 19 (quoting ASC 810-10-25-38H).) Plaintiffs admit that NIO sold battery assets to Weineng and "provide[d] services . . . including battery pack[] monitoring, maintenance, upgrade, replacement, IT system support, etc." (AC ¶ 67.) The Complaint is devoid of any facts to show that the revenue recognized by NIO through the sale of products or the provisions of services (including any amounts due or "Receivables Due to NIO from Weineng") (*see id.* ¶ 103) were not "commensurate with the level of effort required to provide services," or that the commercial terms were not "negotiated at arm's length" (ECF No. 51-3 at 19). The same defect undermines Plaintiffs' allegations regarding "NIO's guarantees for the default of monthly fee subscription fees payable due to Weineng." (*See* AC ¶ 103.) Moreover, Plaintiffs acknowledge that NIO's obligation as guarantor was immaterial (*id.* ¶ 172) and limited to "the accumulated service fees we receive from the Battery Asset Company" (*id.* ¶ 154).

18

Because Plaintiffs fail to plead sufficiently particularized facts demonstrating that Weineng was a NIO VIE or that NIO was Weineng's primary beneficiary, they fail to show that NIO's accounting judgments under ASC 810 were objectively false.

### 2. Plaintiffs Fail To Allege Revenue Collection Was Not Probable

Nor can Plaintiffs show that the "facts and circumstances" available to NIO at the time of the relevant disclosures objectively show that collection of the fees that Weineng owed to NIO was not "probable." (*Id.* ¶ 39 n.6.)  ASC 606 requires that "an entity [] use judgment and consider ***all of the facts and circumstances***, including the entity's customary business practices and its knowledge of the customer, in determining whether it is probable that the entity will collect substantially all of the consideration to which it will be entitled in exchange for the goods" or services.  (*Id.* (quoting ASC 606-10-55-3B).)  As Plaintiffs admit, at the time of the relevant disclosures on April 6, 2021 and April 29, 2022 (*id.* ¶¶ 150, 184), Weineng had successfully "secured sufficient cash to support [its] business model operation" (*id.* ¶ 83; *see id.* ¶¶ 82-92).  In addition, Weineng generated revenue, in part, from monthly subscription fees paid by EV owners who leased batteries from Weineng.  (*Id.* ¶ 11.)  As of December 31, 2020 and September 30, 2021, Weineng's revenue was approximately RMB 5.12 million and RMB 191.7 million, respectively, and its net profit was approximately RMB 4.08 million and RMB 37 million, respectively (Ex. G, Weineng ABN Prospectus at 90-91; Ex. F, NIO Hong Kong Prospectus at 222).  Thus, at the time of the relevant disclosures, the totality of the facts and circumstances supported NIO's determination that revenue collection was probable.[11]

Critically, Plaintiffs do not allege a ***single*** instance in which Weineng actually failed to pay NIO upon the transfer of any product, or the provision of any service, or any instance in which

---

[11]   Plaintiff's reference to Weineng's alleged current ratio again fails for the same reasons explained above. (*Supra* pp. 13-14.)

NIO was required to reverse or restate any previously recognized revenue. *Harris*, 135 F. Supp. 3d at 172 ("In the absence of a restatement or allegations pointing to objective facts that Defendants' accounting methods violated GAAP, carping about Defendants' application of GAAP amounts to no more than a 'naked assertion' devoid of 'further factual enhancement;' it does not permit the Court to infer that the Defendants committed accounting fraud."). Plaintiffs' claim that revenue collection was not probable is plainly speculative and has been disproven by subsequent events.[12]

## II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

The Complaint should be dismissed for the separate and independent reason that Plaintiffs fail to adequately plead "with particularity facts giving rise to a strong inference" that Defendants acted with scienter, *i.e.*, "an intent 'to deceive, manipulate, or defraud.'" *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JPMorgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). The inference "must be 'more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Id*. Scienter can be pled either by showing "(1) that the defendants had both motive and opportunity to commit the fraud" or "(2) strong circumstantial evidence of conscious misbehavior or recklessness." *Golla v. Neovasc, Inc.*, No. 22-361-CV, 2023 WL 2469770, at *2 (2d Cir. Mar. 13, 2023). Plaintiffs fail to plead either.

### A.    Plaintiffs Fail To Plead Motive and Opportunity To Commit Fraud

To plead motive, "plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud. Motives that are generally possessed by most corporate directors and officers do not suffice." *Golla*, 2023 WL 2469770, at *2. Here, Plaintiffs do not

---

12    For the same reasons, Plaintiffs fail to plead facts showing that the Individual Defendants' SOX certifications were not sincerely believed or were objectively false. (AC ¶¶ 160, 196.)

plead any concrete or personal benefit to Individual Defendants. Instead, they allege that Defendants were motivated to commit fraud in order to (i) address NIO's purported "liquidity crisis"[13] (AC ¶ 227) and (ii) increase the price for its secondary stock offerings during the Class Period (*id.* ¶ 228). But such allegations concerning "the desire for the corporation to appear profitable" and "the desire to keep stock prices high" are precisely the type of general motives "possessed by virtually all corporate insiders" that are insufficient as a matter of law to plead scienter. *Rotunno v. Wood*, No. 22-502, 2022 WL 14997930, at \*2 (2d Cir. Oct. 27, 2022); *see also In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531-32 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009); *Gissin v. Endres*, 739 F. Supp. 2d 488, 512-13 (S.D.N.Y. 2010); *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 183 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018).

### B.    Plaintiffs Fail To Plead Conscious Misbehavior or Recklessness

Because Plaintiffs fail to allege motive, "the strength of the circumstantial allegations must be correspondingly greater." *ECA*, 553 F.3d at 198-99. Strong circumstantial evidence of conscious misbehavior or recklessness requires "a state of mind *approximating actual intent*" and "conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original). Plaintiffs fail to make such a showing.

First, Plaintiffs' allegations of GAAP violations alone are insufficient to establish scienter. *ECA*, 553 F.3d at 200; *see also Woolgar*, 477 F. Supp. 3d at 239 ("[T]here must be some showing that Defendants intentionally and deliberately refused to comply with GAAP to adequately plead

---

[13]    As discussed above (*supra* p.4), Plaintiffs' claim that NIO was facing a "severe liquidity crisis" prior to the founding of Weineng is refuted by NIO's 2Q 2020 disclosures, *i.e.*, the quarter immediately preceding the August 2020 founding of Weineng, which Plaintiffs do not allege were inaccurate. (*See* Ex. C, NIO 2Q 2020 Press Release at 7.)

21

scienter."); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 187 (2d Cir. 2014) (mere disagreement about what defendant "should have been doing" with respect to accounting "does not create a strong inference that [Defendants] were reckless"); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020) (allegations of GAAP violations insufficient to plead scienter).

Moreover, NIO's accounting judgments were reviewed and approved by its external auditor, by the third-party forensic accountant engaged by the audit committee to conduct the independent investigation into the Grizzly Report's allegations and by the SEC.  (*Supra* pp. 7-9.) These undisputed facts undermine any inference of scienter.  *See In re Iconix Brand Grp., Inc.*, No. 15 CIV. 4860 (PGG), 2017 WL 4898228, at *19 (S.D.N.Y. Oct. 25, 2017) ("the fact that [defendant's auditor] did not detect, observe, or otherwise note any improprieties in [its] financial accounting—over three consecutive audit years—is significant"); *In re Turquoise Hill Res. Ltd.*, No. 13 Civ. 8846 (LGS), 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014) (no scienter where defendants' auditors had not disapproved of the company's accounting practices); *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 (RJS), 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012) ("that UBS's outside independent auditor . . . did not require a restatement of UBS's financials significantly undercuts Plaintiffs' allegations of recklessness"), *aff'd sub nom. City of Pontiac*, 752 F.3d 173.

Second, Plaintiffs' attempts to plead scienter on the basis of Individual Defendants' corporate positions fail (AC ¶ 30), as they "cannot satisfy [their] burden by virtue of Individual Defendants' high-level positions alone." *Cheng v. Can. Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2021 WL 3077469, at *10 (S.D.N.Y. July 19, 2021) (Broderick, J.).  Plaintiffs fail to allege that Defendants received or were aware of any internal report, communication or other information

22

contradicting the Company's filings.  Their vague allegations that Defendants were generally aware of GAAP principles governing consolidation of VIEs are not sufficiently particularized to show access to specific information contradicting their public statements.  (AC ¶¶ 219-25); *see Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 352 (2d Cir. 2020) (conclusory allegation that defendants "were aware of a variety of information that Plaintiffs say is inconsistent with those statements" insufficient to plead recklessness).

Finally, Plaintiffs' allegation that NIO kept its equity interest in Weineng at 19.84%, "a hairsbreadth under the 20% equity/voting figure that Defendants knew would provide a presumption that NIO significantly controlled Weineng," adds nothing.  (AC ¶ 226.)  Even if true, this is in no way indicative of fraud, but would merely suggest the Company paid attention to the relevant accounting rules.  Plaintiffs also allege no facts to show that NIO was in a position to influence Weineng's other investors to ensure that NIO's equity stake in Weineng stay under 20%. In fact, as Plaintiffs admit, NIO *increased* its investment during the Class Period, undermining any inference that NIO intentionally maintained an artificially low equity interest in Weineng (whatever that means) for an improper purpose.  (*Id.*)

### C.     The Alleged Facts Support a Far More Compelling Inference of No Fraud

Plaintiffs fail to show that the inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Cheng*, 2021 WL 3077469, at *9; *In re Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 358-59 (S.D.N.Y. 2020), *appeal filed*, No. 21-2546 (2d Cir. Oct. 8, 2021).  NIO's swift response to the Grizzly Report's allegations, including by initiating an audit committee-led investigation and responding to the SEC's inquiry which did not result in any regulatory action, "support[s] a more cogent and compelling inference of non-fraud."  *In re Iconix*, 2017 WL 4898228, at *19.  The far more cogent and compelling inference is

that NIO genuinely believed its accounting judgments were correct because Weineng had successfully secured financing and attracted additional investment sufficient to finance its activities as an independent battery asset company, and thus (i) was not a NIO VIE and (ii) could compensate NIO for products or services rendered through their ordinary business arrangements.

## III.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Dismissal is also warranted because Plaintiffs fail to plead loss causation, "*i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 173 (2d Cir. 2005).  As a threshold matter, because the relationship between NIO and Weineng was never concealed (*see supra* § I.A), neither of Plaintiffs' alleged corrective disclosures revealed "prior statements [that] were not entirely true or accurate." *Colbert v. Rio Tinto Plc*, No. 17-CIV-8169 (AT) (DCF), 2022 WL 355400, at *3 (S.D.N.Y. Feb. 7, 2022); *see Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013).

In any event, neither of Plaintiffs' two alleged corrective disclosures—the Grizzly Report and NIO's announcement of an internal investigation—is sufficient to plead loss causation.  The Grizzly Report itself makes clear that it is nothing more than "[a] negative . . . characterization of previously disclosed facts," which "does not constitute a corrective disclosure of anything but the [author's] opinions." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). Because the Report is based on "publicly available facts and evidence" (Ex. K, Grizzly Report at 34), Plaintiffs must allege facts supporting "an inference that [Defendants'] purported fraud, rather than [the Report's] discussion of public information," caused their loss.  *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 498 (S.D.N.Y. 2016); *see also Janbay v. Canadian Solar, Inc.*,

24

No. 10 Civ. 4430 (RWS), 2012 WL 1080306, at *14-16 (S.D.N.Y. Mar. 30, 2012). Plaintiffs fail to do so.

Similarly, "[t]he announcement of . . . an internal investigation is itself insufficient to plead loss causation." *Janbay*, 2012 WL 1080306, at *15. When NIO announced its internal investigation, the allegations in the Grizzly Report had already been made public and were known to the market. Even if the Grizzly Report revealed fraud (which it did not), the announcement of the investigation alone did not "reveal to the market that [the Defendants'] prior statements were not entirely true or accurate." *Colbert*, 2022 WL 355400, at *3.[14] Indeed, the independent investigation ultimately concluded that the Grizzly Report allegations were not substantiated.

## CONCLUSION

For the foregoing separate and independent reasons, the Amended Complaint should be dismissed in its entirety with prejudice.

---

[14] Because Plaintiffs fail to state a primary violation under Section 10(b), their control person claim under Section 20(a) necessarily fails. *ATSI*, 493 F.3d at 108.

25

Dated: New York, New York
　　　May 1, 2023

Respectfully submitted,

/s/ Robert A. Fumerton
SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Judith A. Flumenbaum
One Manhattan West
New York, New York 10001
Phone:　(212) 735-3000
Fax:　　(212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
judy.flumenbaum@skadden.com

*Attorneys for Defendant NIO Inc.*

26