# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEDDY J. SAYE, Individually and On Behalf of All Others Similarly Situated, | Case 1:22-cv-07252 |
| Plaintiff, | CLASS ACTION |
| v. | |
| NIO INC., BIN LI, and WEI FENG, | |
| Defendants. | |
| TARAS CEGLIA BOHONOK, Individually and On Behalf of All Others Similarly Situated, | Case 1:22-cv-07666 |
| Plaintiff, | |
| v. | |
| NIO INC., BIN LI, and WEI FENG, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NIO INC.'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

00748857;V1

<u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS ................................................................................................5

      A.     NIO's Unsustainable Business Model Causes A Liquidity Crisis........................5

      B.     Defendants Create BAC to Address the Liquidity Crisis – The Plan Works .......5

      C.     The Truth is Revealed and Post-Class Period Events ..........................................6

ARGUMENT .......................................................................................................................6

I.      LEGAL STANDARD...............................................................................................6

II.     NIO INFLATED ITS REVENUE BY FAILING TO CONSOLIDATE BAC ................7

      A      NIO Had "Non-substantive Voting Rights" In BAC. ..........................................7

            1.     NIO's 55% Economic Interest is Disproportional To Its Equity And Substantially All of BAC's Activities Involve NIO ........................7

            2.     BAC Lacked Sufficient Capital to Fund Its Business..............................9

      B.     In Addition to Being a VIE, NIO Was BAC's Primary Beneficiary ...................9

            1.     NIO Had The Power To Direct BAC's Activities ...................................9

            2.     NIO Had to Absorb BAC's Losses and Could Receive Its Benefits .......................................................................................11

III.    DEFENDANTS MADE MATERIAL MISREPRESENTATIONS...............................12

      A.     NIO Repeatedly Misrepresented It Had "Limited Control" Over BAC, Failed to Disclose BAC As a VIE, And Reported Inflated NIO Revenue Figures ........................................................................................13

      B.     NIO Did Not Disclose All Relevant Information About BAC ..........................16

IV.    THE COMPLAINT PLEADS A STRONG INFERENCE OF SCIENTER ..................17

      A.     Defendants Created BAC To Inflate NIO's Revenues ......................................17

      B.     Defendants Were Well Aware of VIE Reporting Requirements ........................18

      C.     NIO's Calculated 19.84% BAC Equity Further Supports Scienter ...................18

     D.     Defendant Feng Deceived the SEC ................................................................. 18

     E.     Defendants Were Motivated to Commit Fraud ................................................ 19

            1.     Defendants Needed to Address NIO's Liquidity Crisis .......................... 19

            2.     Defendants Needed to Raise Capital ...................................................... 20

     F.     Collectively, the Evidence of Scienter is Overwhelming ............................... 20

     G.     NIO's Laundry List of Excuses for Defendants' Fraud Fails ........................... 21

V.     PLAINTIFFS SATISFY LOSS CAUSATION PLEADING REQUIREMENTS ......... 24

CONCLUSION .......... ........................................................................................................... 25

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

Aldridge v. A.T. Cross Corp.,
284 F.3d 72 (1st Cir. 2002) ........................................................................................ 22

Altayyar v. Etsy, Inc.,
242 F. Supp. 3d 161 (E.D.N.Y. 2017), *aff'd*,
731 F. App'x 35 (2d Cir. 2018) ................................................................................ 20

Annecca Inc. v. Lexent, Inc.,
307 F. Supp. 2d 999 (N.D. Ill. 2004) ........................................................................ 21

Bos. Ret. Sys. v. Alexion Pharm., Inc.,
556 F. Supp. 3d 100 (D. Conn. 2021) ........................................................................ 25

Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v.
Barclays PLC,
56 F. Supp. 3d 549 (S.D.N.Y. 2014) ........................................................................ 19

Cheng v. Canada Goose Holdings Inc.,
No. 19-CV-8204 (VSB), 2021 WL 3077469 (S.D.N.Y. July 19, 2021) ............................ 17, 20

City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) ........................................................................ 17

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
752 F.3d 173 (2d Cir. 2014) ................................................................................ 18, 22

City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.,
814 F. Supp. 2d 395 (S.D.N.Y. 2011) ........................................................................ 25

Colbert v. Rio Tinto Plc,
No. 17 Civ. 8169 (AT) (DCF), 2022 WL 355400 (S.D.N.Y. Feb. 7, 2022), *appeal docketed*,
22-1716 (2d Cir. Aug. 8, 2022) ........................................................................ 25, 26

Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP,
No. 2:11-cv-746-BJR, 2017 WL 8890271 (M.D. Ala. Dec. 28, 2017) .................................. 21

ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,
553 F.3d 187 (2d Cir. 2009) ................................................................................ 17, 19

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011).................................................................................................... 12

*Fila v. Pingtan Marine Enter. Ltd.*,
   195 F. Supp. 3d 489 (S.D.N.Y. 2016)...................................................................................... 25

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010)...................................................................................... 20

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010)...................................................................................... 20

*Golla v. Neovasc, Inc.*,
   No. 22-361-CV, 2023 WL 2469770 (2d Cir. Mar. 13, 2023).................................................. 20

*Harris v. AmTrust Fin. Servs., Inc.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*,
   649 F. App'x 7 (2d Cir. 2016) .......................................................................................... 23, 24

*Hutchison v. Deutsche Bank Sec. Inc.*,
   647 F.3d 479 (2d Cir. 2011)..................................................................................................... 15

*In re Allianz Global Inv. U.S. LLC Alpha Series Litig.*,
   No. 20 Civ. 5615 (KPF), 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) ................................ 18

*In re Ambrac Fin. Grp., Inc. Sec. Litig.*,
   693 F. Supp. 2d 241 (S.D.N.Y. 2010)...................................................................................... 11

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   No. 17-cv-1545 (LAK), 2020 WL 2787117 (S.D.N.Y. Apr. 20, 2020) ................................... 12

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   No. 17 Civ. 1580 (LGS), 2018 WL 2382600 (S.D.N.Y. May 24, 2018)........................... 12, 21

*In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*,
   No. 14-cv-4471 (KMW), 2016 WL 922711 (S.D.N.Y. Mar. 7, 2016)........................ 16, 24, 25

*In re Citigroup Inc. Sec. Litigation*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010)....................................................................... 13, 14, 16

*In re Diamond Foods, Inc., Sec. Litig.*,
   No. C 11-05386 WHA, 2012 WL 6000923 (N.D. Cal. Nov. 30, 2012) ................................... 24

*In re EHang Holdings Ltd. Sec. Litig.*,
   No. 21 Civ. 1392 (GBD), 2022 WL 17718546 (S.D.N.Y. Dec. 15, 2022).............................. 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   618 F. Supp. 2d 311 (S.D.N.Y. 2009)...................................................................................... 16

*In re Global Brokerage, Inc.*,
No. 1:17-cv-00916-RA, 2019 WL 1428395 (S.D.N.Y. Mar. 28, 2019) ............................ passim

*In re Global Crossing, Ltd. Sec. Litig.*,
322 F. Supp. 2d 319 (S.D.N.Y. 2004) ................................................................................ 12

*In re Iconix Brand Grp., Inc.*,
No. 15 Civ. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ................................ 22

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ............................................................................ 22, 23

*In re Longwei Petr. Inv. Hold. Ltd. Sec. Litig.*,
No. 13-CV-214 (HB), 2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ........................................ 23

*In re MBIA, Inc., Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010) ................................................................................ 16

*In re Omnicom Grp., Inc. Sec. Litig.*,
No. 02 Civ. 4483(RCC), 2005 WL 735937 (S.D.N.Y. Mar. 30, 2005) ............................. 15, 25

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom.*
*Condra v. PXRE Grp. Ltd.*,
357 F. App'x 393 (2d Cir. 2009) ....................................................................................... 20

*In re Silvercorp Metals Sec. Litig.*,
26 F. Supp. 3d 266 (S.D.N.Y. 2014) ................................................................................. 21

*In re Silver Wheaton Corp. Sec. Litig.*,
No. CV15-5146-CAS(JEMx), 2016 WL 3226004 (C.D. Cal. June 6, 2016)) .................... 21, 22

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018) ............................................................................... 15

*In re Turquoise Hill Res. Ltd.*,
No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ........................... 21, 22

*In re UBS AG Sec. Litig.*,
No. 07 CIV. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*
*City of Pontiac Policemen's & Firemens's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014) ............................................................................................. 22

*Janbay, v. Canadian Solar, Inc.*,
No. 10 Civ. 4430(RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................... 25

*Lea v. TAL Educ. Grp.*
  837 F. App'x 20 (2d Cir. 2020) ................................................................... 14, 16, 24

*Lehmann v. Ohr Pharm., Inc.*,
  830 F. App'x 349 (2d Cir. 2020) ........................................................................ 20

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020)................................................................. 23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................................................ 25

*Matrixx Initiatives v. Siracusano*,
  563 U.S. 27 (2011)............................................................................................... 7

*Metz v. U.S. Life Ins. Co. in the City of New York*,
  662 F.3d 600 (2d Cir. 2011)................................................................................. 7

*Micholle v. Opthotech Corp.*,
  No. 17-CV-210 (VSB), 2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019) ................ 24

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
  89 F. Supp. 3d 602 (S.D.N.Y. 2015)................................................................... 25

*Roofer's Pen. Fund v. Papa*, Civ. A.,
  No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ...................................... 16

*Rotunno v. Wood*,
  No. 22-502, 2022 WL 14997930 (2d Cir. Oct. 27, 2022)...................................... 20

*Sachsenberg v. IRSA Invesiones y Representaciones Sociedad Anónima*,
  339 F. Supp. 3d 169 (S.D.N.Y. 2018) ................................................................. 23

*S.E.C. v. Gruss*,
  859 F. Supp. 2d 653 (S.D.N.Y. 2012).................................................................. 19

*S.E.C. v. Spiegel, Inc.*,
  No. Civ.A. 03 C 1685, 2003 WL 22176223 (N.D. Ill. Sept. 15, 2003) .................. 21

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
  545 F. Supp. 3d 120 (S.D.N.Y. 2021)............................................................. 16, 24

*Skinner v. Switzer*,
  562 U.S. 521 (2011)............................................................................................. 6

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.,*
  531 F.3d 190, 195 (2d Cir. 2008)…..................................................................... 17

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................ 20

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
    985 F.2d 1190 (2d Cir. 1993) ........................................................................... 16, 24

*Van Dongen v. CNinsure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013) ................................................................... 20

*Woolgar v. Kingstone Cos., Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) .............................................................. 12, 17

*Yates v. Municipal Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ................................................................................ 14

*Rules*

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 6

Fed. R. Civ. P. 15(a) ................................................................................................ 25

*Regulations*

17 C.F.R. § 202.5(d) ................................................................................................ 22

Lead Plaintiff Dr. Mohammad Siddiqui ("Lead Plaintiff"), together with additional named plaintiff Barry King (collectively, "Plaintiffs"), submit this opposition to the motion to dismiss (the "Motion") filed by Defendant NIO Inc. ("NIO" or the "Company").[1]

## PRELIMINARY STATEMENT

NIO's Motion should be denied. Plaintiffs adequately allege Defendants knowingly or recklessly violated GAAP by failing to consolidate the financials of Wuhan Weineng Battery Asset Co. Ltd. ("BAC") – a Variable Interest Entity ("VIE") created and run by and for the benefit of NIO – with NIO's financials. Defendants created BAC so that NIO could unlawfully pull forward hundreds of millions of dollars in revenue and contrive a long-term solution to its liquidity crisis. On June 28, 2022, Grizzly issued a Report revealing Defendants' alleged accounting fraud. NIO stock fell. Despite hastily dismissing the Report as meritless, on July 11, 2022, NIO disclosed it formed a committee to investigate the claims, acknowledging the Report's seriousness. NIO stock fell again. Defendants' alleged fraud caused investors hundreds of millions of dollars in losses.

Plaintiffs satisfy Rule 10b-5's pleading requirements. Under GAAP, Defendants had to disclose BAC was a VIE and consolidate its financials with NIO's. They did neither. Thus, Defendants' statements about NIO's revenue and relationship to BAC were misleading when made. In 2021 alone, NIO recognized a material $600 million in revenue (11%) from this scheme.

Plaintiffs also demonstrate a strong inference of scienter. Li publicly discussed transferring the costly "burden" of the battery assets from NIO to BAC (¶60) as a long-term solution to NIO's liquidity crisis, but concealed that NIO still could not lawfully recognize the full revenue from the batteries at once because BAC needed to be consolidated with NIO. Defendants were responsible

---

[1] References to "¶_" and otherwise undefined terms refer to Plaintiffs' Complaint (the "Complaint") (ECF No. 51). References to NIO's Motion are cited as "Br. _". "Defendants" means NIO, Bin Li, and Wei Feng. Defense counsel accepted service for NIO, but not for Li and Feng. Plaintiffs are in the process of serving these defendants in China. All emphasis in quotations are added unless otherwise noted.

00748857;V1

for reporting VIEs, knew the rules, and manipulated them. Defendants even deceptively conflated NIO's equity and economic interests when responding to the SEC's probe into BAC's VIE status.

Plaintiffs also meet the light causation standards. The Report revealed BAC had to be consolidated with NIO, and later, despite summarily denying the Report, NIO revealed it was launching an investigation into the Report's claims. NIO would not have taken this step if it truly believed the market reacted with a "collective shrug". NIO stock fell after both disclosures.

NIO denies BAC was a VIE to no avail. Courts find the VIE analysis highly fact-based and thus inappropriate for a motion to dismiss; nevertheless, with all inferences in Plaintiffs' favor, Plaintiffs handily show BAC was a VIE. Under GAAP, an entity is a VIE if, *inter alia*, its economic interest is disproportional to its equity interest. Here, NIO's economic interest was 55% compared to its 20% equity interest. NIO's economic interest accounts for its $75 million equity in BAC *and* BAC's $220 million accounts payable, *i.e.*, debt to NIO (the "Debt"). NIO's economic interest was also disproportional as almost all BAC's activities involved or were conducted by and for NIO and because BAC lacked enough equity at risk to fund its activities without help. *See infra* 7-9.

NIO does not meaningfully challenge Plaintiffs' 55% calculation. Instead, NIO claims it was not based on accounting expertise despite that the Complaint states Plaintiffs consulted with "an accounting expert". Complaint at page 1. Equally absurd, NIO mischaracterizes the Debt, asserting Plaintiffs wrongly included "revenue [] from arm's length business transactions". Br. 3. NIO's "arm's length" claim is bankrupt. ***It was indisputably NIO's burden to substantiate in audited financial statements that its transactions with BAC, a related party, were arm's length to defeat GAAP's default presumption that they were not***. *See infra* 11. NIO did not do so (nor did it reveal any terms of its deals with BAC), and it cannot do so now by *ipse dixit*. Moreover, NIO cannot argue Debt should be excluded. Even PwC – the parent of NIO's auditor – recognizes

debt is part of the equation. *See infra* 8. NIO self-servingly wants to focus the Court only on its equity in BAC (because NIO carefully manipulated that), but the economic interest standard that the Court must apply here under GAAP tells the whole story – and NIO's interest is clearly disproportional.

Next, NIO unconvincingly argues it was not BAC's primary beneficiary, and thus did not need to consolidate BAC's financials. NIO ignores the overwhelming facts to the contrary. NIO expressly created BAC to relieve its financial burden and was BAC's only revenue source. NIO had unfettered power to control BAC to further its interests, even to BAC's detriment. Indeed, NIO directed every facet of BAC's business, including hosting its launch event, speaking on its behalf, setting the terms of its contracts, maintaining and servicing its batteries, guaranteeing defaults on contracts (the "Guarantees"), collecting its payments, and facilitating its financing. ¶¶63-70. Given NIO's extensive control, the fact that NIO only had the power to install the Chairman of BAC's board of directors is meaningless – NIO did not need to exert more control.

NIO was also BAC's primary beneficiary as NIO uniquely had to absorb potentially significant losses from BAC, *i.e.* hundreds of millions of dollars in Debt and Guarantees, and had the right to receive significant benefits, *i.e.* billions of dollars in revenue from battery sales. ¶¶66, 103. NIO once again tries to exclude these transactions as "arm's length" but (again) it cannot.

NIO argues to no avail that Plaintiffs merely have a different subjective opinion about VIE accounting. This argument has been rejected by courts where, like here, plaintiffs present objective facts that weigh heavily, if not overwhelmingly, against defendants' so-called opinions. Defendants also subjectively knew their accounting was wrong as they, hoping to skirt the VIE rules, purposefully created BAC to accelerate NIO's revenue recognition. *See infra* 10.

NIO incorrectly claims Plaintiffs' scienter allegations are based on corporate position and plain vanilla motives. Plaintiffs allege facts showing conscious misbehavior, including that Defendants were responsible for reporting VIEs, whose rules they knew well; announced the plan to create BAC to accelerate NIO's revenue and end its liquidity crisis; and manipulated NIO's equity to fall a mere 0.16% below 20% so as not to trigger the presumption that NIO controlled BAC. The competing inference of innocence is not credible, let alone more compelling than a fraudulent inference. The idea that NIO acted by the book and created a unicorn entity that walks, talks, and acts like a VIE, but somehow was not one is too good to be true.

NIO also wrongly asserts Plaintiffs did not satisfy causation. NIO claims it disclosed everything, but Plaintiffs had to retrieve materials from China, translate them, and decipher them with an accounting expert. That is hardly full disclosure. *See infra* 16. NIO also argues its July 11, 2022 disclosure did not correct any misstatements. Not so. After quickly dismissing the Report, NIO's investigation acknowledged the seriousness of the Report and led to a 9% stock drop.

Finally, NIO tries to immunize itself with a laundry list of excuses, but none work. NIO claims PwC Zhong Tian ("PwC ZT") signed off on its financials, but Defendants are responsible for NIO's financials (including reporting VIEs). *See infra* 22. Moreover, the issue on this Motion is not whether the auditor objected, but whether the Complaint states a claim, and it does. Nevertheless, discovery will show if Defendants misinformed PwC ZT as they did the SEC (rendering the SEC's inaction meaningless). Furthermore, NIO's failure to restate its financials, and its committee's white washing, are inconsequential when, like here, they were conflicted. *See infra* 23. Lastly, the mere fact that a short seller uncovered NIO's fraud is no defense – short sellers are adept at exposing frauds and piecing puzzles together from buried information. *See infra* 24.

For these reasons and those given below, NIO's Motion should be denied in its entirety.

**STATEMENT OF FACTS**

A.      **NIO's Unsustainable Business Model Causes A Liquidity Crisis**

NIO was founded in 2014 by Li. ¶41. NIO EVs allow for battery swapping – a costly service requiring NIO to build and maintain swap stations and have on hand sufficient batteries. ¶42. About half of NIO customers leased batteries directly from NIO (over a 5-6.5 year term), but under GAAP NIO could only gradually recognize revenue on them as payments were made. ¶¶45, 47, 178. By early 2020, NIO faced a serious liquidity crisis due to this business model. ¶49.

B.      **Defendants Create BAC to Address the Liquidity Crisis – The Plan Works**

On August 11, 2020, NIO created BAC with three other investors (chosen by Defendants due to deep NIO ties) and revealed NIO's new BaaS model, the long-term solution to its liquidity crisis. ¶¶53-55. Under BaaS, BAC would buy the batteries from NIO and lease them to customers so that NIO could recognize the full battery revenue immediately. ¶53.

On August 20, 2020, NIO held BAC's launch event. ¶59. Li introduced BAC and explained that its key purpose was to improve NIO's financials: "There must be someone to hold the battery assets. Otherwise we have to hold them by ourselves. ***But that will be too much a financial burden.... So an independent battery asset company is needed***." ¶60. Li stated BAC was intended to "strengthen NIO's bargaining power [] and ***push up [] gross profit***", *i.e.* to serve NIO's interests. ¶¶59-61. BAC's only revenue source was NIO's BaaS subscribers during the Class Period.  ¶53.

NIO controlled BAC. BAC was "dedicated to [buying from NIO] and owning the assets of battery packs" (¶64), NIO set prices for the EVs, batteries, and swap network (¶64), NIO operated the swap stations (¶¶65, 67-68), could stop or alter the BaaS program (¶65), obtained financing for BAC (¶83), collected payments for BAC (¶65), and installed senior managers at BAC who also worked at NIO. ¶¶71-76. To appear independent, BAC paid "small" service fees to NIO (which BAC could potentially recoup via the Guarantees, *see* ¶154, Br. 5); BAC took out insurance on

the batteries (*see id.*); and BAC's articles of incorporation superficially claimed its shareholders had decision-making authority through their voting power. Br. 6-7; ¶130.

Once BAC was online, and NIO started recognizing all the battery revenue up front, NIO's revenues skyrocketed. Indeed, NIO more than doubled its 4Q20 revenue. ¶81. For FY2021, BAC's first full year, NIO reported revenue of RMB 26.13 billion, compared to RMB 16.25 billion for FY2020, eight months of which NIO leased the batteries (¶78). RMB 4 billion of this revenue ($600 million) was from BAC (*see id.*), most of which was wrongly recognized. ¶¶84, 95.

### C.    The Truth is Revealed and Post-Class Period Events

On June 28, 2022, the Report revealed BAC was a front to boost NIO revenues. NIO stock fell 2.5% and NIO quickly dismissed the Report as meritless. ¶¶114-117. On July 11, 2022, NIO conceded the Report's merit by forming a committee to investigate its claims, which NIO wouldn't have done if it truly thought the market was unconcerned. NIO stock fell about 9%. ¶¶118-119.

On August 26, 2022, after the Class Period, NIO stated the investigation was mostly complete and conclusorily stated the Report's key allegations were unsubstantiated. ¶208. NIO stock fell again. ¶19. The SEC later questioned NIO's VIE BAC analysis. NIO misled the SEC by claiming its BAC economic interest was simply its BAC equity interest. ¶¶130-132.[2]

### ARGUMENT

### I.    LEGAL STANDARD

Under Rule 12(b)(6), the question is "not whether [the plaintiff] will ultimately prevail," but "whether [its] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). The Court must "accept all factual allegations as true and

---

[2] NIO stated in its 2022 20-F that BAC still owes NIO 1.376 billion RMB (over $190 million). NIO also recently canceled free battery swaps, further showing the BAC sham couldn't prop up NIO. *See* (https://ir.nio.com/static-files/a5408c40-1840-488c-9658-dcf5e21c9665); (https://www.fool.com/investing/2023/06/27/is-nio-stock-following-in-teslas-footsteps).

draw all reasonable inference in favor of the plaintiff." *Metz v. U.S. Life Ins. Co. in the City of New York*, 662 F.3d 600, 602 (2d Cir. 2011).[3]

## II.  NIO INFLATED ITS REVENUE BY FAILING TO CONSOLIDATE BAC

NIO claims BAC was not a VIE, did not require consolidation, and thus NIO made no false statements here. Courts find VIE analyses highly fact-based and unripe for resolution at this stage. *In re Global Brokerage, Inc.*, No. 1:17-cv-00916-RA, 2019 WL 1428395, at *2 (S.D.N.Y. Mar. 28, 2019). Nevertheless, with all fact inferences in Plaintiffs' favor, NIO's argument fails, chiefly because NIO held a variable interest in BAC (which is undisputed, *see* ¶99), and had "non-substantive voting rights" in BAC, *e.g.*, an economic interest disproportionate to its voting interest. Plaintiffs also decisively show NIO had to consolidate BAC as a VIE as NIO could control BAC and reap its benefits and absorb its losses, *i.e.*, NIO was its primary beneficiary. ¶36.

### A.  NIO Had "Non-Substantive Voting Rights" In BAC

#### 1.  NIO's 55% Economic Interest is Disproportional To Its Equity Interest And Substantially All of BAC's Activities Involve NIO

NIO does not credibly dispute its economic interest in BAC is disproportional to its equity interest. Instead, NIO mischaracterizes the Debt, and argues Plaintiffs wrongly included "revenue earned from arm's length business transactions". Br. 3.  This argument is meritless and fails.

Plaintiffs' 55% economic interest calculation properly accounts for NIO's $75 million equity interest **and** BAC's $220 million Debt. GAAP expressly states that "reporting entities shall consider each party's obligations to absorb expected losses and rights to receive expected residual returns related **to all of that party's interests in the legal entity and not only to its equity**

---

[3] To state a 10(b) claim, Plaintiffs must allege a material misrepresentation or omission, scienter, connection with the purchase or sale of a security, reliance, damages, and loss causation. *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 37-38 (2011). NIO contests falsity, scienter, and causation, but its challenges fail.

*investment at risk*". ¶¶102-104. Both PwC, NIO's auditor, and E&Y, BAC's auditor, recognize debt is properly considered here.[4] *See* Exhibit B at 187; Fumerton Ex. I at 93. NIO wants the Court to exclusively consider equity (Br. 20) because NIO manipulated that interest during the Class Period to further its scheme. ¶36. But NIO cannot ignore GAAP's current and clear directive to analyze "all" economic interests. *See* ASC 810-10-15-14(c). NIO's disproportional interest is also shown by its unique obligation to absorb BAC's losses (Debt and Guarantees).

NIO's claim that BAC's articles of incorporation show other shareholders on equal footing (Br. 14) is a non-starter. BAC only served NIO, its creator and sole revenue source. ¶¶37, 63-70. Plaintiffs did not need to compare NIO's economic interest in BAC with other investors (as NIO suggests) as there was nothing meaningful to compare beyond equity.

As argued at more length below, NIO's voting rights were also non-substantive because almost of all of BAC's activities involved, or were on the behalf of, NIO. *See* ¶37 (citing ASC 810-10-15-14c); ¶¶63-76.[5] Indeed, BAC was a mere facet of NIO's business. ¶63. NIO designed BAC to purchase the leased batteries from NIO – its only customer. ¶53. NIO supplied BAC with all of its customers (which during the Class Period were all NIO customers), singularly controlled the relationship with those customers (even potentially to BAC's detriment), and even installed its own managers at BAC to oversee operations. ¶63. No other investor in BAC was similarly situated

---

[4]  *See* Exhibit A at 4-48 to 4-49 (companies A and B each paid $20 million for an entity's common stock; company A loaned the entity $50 million; PwC found the entity was "[m]ost likely" a VIE of company A). *See also* Exhibit B at 187 (E&Y making same findings).

[5] *See* Exhibit A at 4-49 to 4-50 (when an "entity's major activities include purchasing substantially all of its purchased products from the reporting entity", the "principal activity of [an] entity is to provide financing (*e.g*., loans or leases) to the reporting entity's customers[,]" or the "principal purpose of [an] entity is to conduct a business that is uniquely complementary to a significant business operation of the reporting entity", that supports a finding that the entity is a VIE). *See* Exhibit C (PwC also notes that when an entity "is significantly involved in [] negotiati[ng] terms" (like NIO) then it "could be more consistent with debt").

– they were actually at NIO's mercy vis a vis BAC because BAC's only revenues were from NIO customers. *Id*. *See infra* 9-11.

### 2.    BAC Lacked Sufficient Capital to Fund Its Business

Although not required, Plaintiffs also show BAC could not function without financial support. ¶36. Indeed, with NIO's help, BAC raised money *six* times during the Class Period. ¶¶92-94, 105, 56, 82, 88, 90, 96, 98. Li was the point person and gatekeeper for investing in BAC. *¶*83. Even with assistance from NIO, and perpetual cash infusions, BAC still had a .36 asset to liability ratio as of December 31, 2021, showing it could not pay its debts at that time.  ¶¶108-113.[6]

### B.    In Addition to Being a VIE, NIO Was BAC's Primary Beneficiary

Because NIO was also BAC's primary beneficiary, BAC's financials needed to be consolidated with NIO's.

### 1.    NIO Had The Power To Direct BAC's Activities

BAC's genesis and all its activities thereafter were directed by NIO, to benefit NIO. NIO ran BAC's launch event, during which Li explained BAC's purpose was to serve NIO. ¶61. NIO, which repeatedly spoke on BAC's behalf, stated BAC was "dedicated to purchasing and owning the assets of battery packs" of BaaS subscribers. ¶64. NIO had the power to stop or alter BaaS, even to BAC's detriment. ¶65. A NIO subsidiary collected monthly BaaS payments on BAC's behalf, and NIO provided Guarantees to BAC in case of defaults. ¶¶65-66. NIO physically controlled the batteries sold to BAC by maintaining, charging, and distributing them alongside NIO-owned batteries. ¶69. And NIO hand-selected BAC's shareholders, installed overlapping senior managers, and helped BAC secure financing. ¶¶55, 71-75, 92-93. BAC did not even decide

---

[6] NIO claims BAC's capital raises show it could raise money. NIO misses the point – BAC could not fund itself without major help, including from NIO. NIO also claims BAC's financings were not "subordinated financial support" (Br. 14), but that determination would require an evaluation of financing terms, which NIO and BAC have not fully disclosed. *Compare* Fumerton Ex. G.

how many batteries it should buy from NIO, nor did it make products, have intellectual property, or maintain a sales force. ¶68. NIO controlled virtually every facet of BAC's business. ¶70.[7]

In the teeth of these overwhelming facts, NIO absurdly argues BAC was independent, and offers superficial reasons to support this specious claim. NIO asserts BAC's business was based on "customer demand" (Br. 16), but ignores that this demand was entirely for NIO EVs. NIO argues in the "long term" "other car companies [were] welcomed to partner with [BAC]" (Br. 5-6), but NIO's control of BAC during the Class Period is the issue, not possible future control. NIO further claims its Guarantees were small (only up to the amount of service fees BAC paid NIO (Br. 5)), but this only further underscores BAC's dependence on NIO.[8]

NIO further argues it was only entitled to appoint one BAC director, but given the overwhelming evidence showing control, that is meaningless as NIO clearly did not need more than one director to exert control. NIO also carefully omits that the director it did appoint was BAC's chairman. NIO's claim that Plaintiffs do not allege Lu or Tingting were "employed by [BAC] and NIO at the same time" also fails. Br. 16. Plaintiffs allege there were common employees. ¶¶71, 72. Lu is also a significant link between NIO and BAC as he was "Battery Operation Supervisor at NIO subsidiary 'Shanghai NIO'". Lu said earlier that NIO would form an entity to "manage battery assets" and "use it … to get money" – which is what NIO did. ¶72.

---

[7] NIO claims the invoices Li referred to at the launch were pre-BAC. Besides raising impermissible fact issues, NIO did not submit the invoices and its assertion contradicts Li's own representation that "this [sic]is the first invoices issued to the vehicle and battery separately". Li added that "[t]he vehicle is sold to the user while the battery is sold to a third party company. First time ever." *See* BaaS Launch Event at 26:55.

[8] NIO's transfer of "control" of the battery to BAC is not to the contrary. *See* ¶172; Br. 16. NIO controlled **BAC** top to bottom. *See infra* 9-10. And Plaintiffs do support their allegation that NIO set battery prices. *See* ¶64 ("NIO [] set the prices for its [] EV batteries…") (citing BaaS launch event). *Compare* Br. 16.

### 2.    NIO Had to Absorb BAC's Losses and Could Receive Its Benefits

NIO was also BAC's primary beneficiary since it had to absorb potentially significant BAC losses or had the right to receive potentially significant BAC benefits. Indeed, NIO – unlike any other BAC investor – was able to recognize billions of dollars in revenue from the battery sales *and* was exposed to hundreds of millions of dollars in losses from the Debt and the Guarantees.

NIO claims GAAP excludes revenue earned from "arm's length" transactions from the analysis here, but this argument is misleading and fails. Br. 18. First, GAAP states "*fees paid* to a reporting entity" are only excluded if they were arm's length, but NIO deceptively left out "paid" (Br. 3), and Plaintiffs only counted *unpaid fees* (*i.e.*, Debt) for the absorption of losses analysis. Second, as noted *supra*, the transactions here are presumed *not* to be arm's length. It is undisputed BAC was a NIO related party. *See* ¶100. For the Court to consider these transactions "arm's length", NIO would have had to already substantiate that in the Company's audited financials – which NIO did not do. *See supra* 2-3. NIO has never revealed the terms of transactions with BAC.

NIO's only purported "support" for its "arm's length" claim is an unaudited non-GAAP Hong Kong Prospectus, which states NIO's "[d]irectors are of the view that…pricing of batteries sold to [BAC] are determined on an arm's length basis". This conclusory claim by interested parties for one reporting period is hardly the substantiation required by GAAP.[9] Thus, the presumption remains that NIO's transactions with BAC were *not* arm's length. NIO cannot shift its burden to Plaintiffs here. Moreover, NIO's claim cannot even be considered at this stage as it raises yet another impermissible fact question. *See*, *e.g.*, *In re Ambrac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 273 (S.D.N.Y. 2010) ("disagreements over GAAP compliance" raise

---

[9] *See* ASC 850-10-50-5 ("Transactions [with] related parties cannot be presumed to be carried out on an arm's-length basis…[unless] such representations can be substantiated"). *Cf.* April 29, 2022 20-F at 30 ("[w]e may face [] adverse tax consequences if [] authorities determine [] contractual arrangements between NIO Co., Ltd. [and NIO's] current and past VIEs [] *were not entered into on an arm's length basis*").

improper fact issues); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 338-41 (S.D.N.Y. 2004) (developed record needed where "allegations [] question [GAAP] compliance").

Defendants also cannot write off this case as "second-guess[ing] inherently subjective and uncertain assessments" and by characterizing their own statements as opinions. Br. 11. First, financial reporting is not opinion where the plaintiffs "allege objective facts that would weigh ***heavily, if not overwhelmingly***" against a defendant's GAAP application. *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at \*10 (S.D.N.Y. May 24, 2018). Here, there is "heav[y]", "objective" and "overwhelming[]" evidence showing BAC was a VIE requiring consolidation – thus, this is no mere disagreement about "uncertain" GAAP assessments – this is fraud. *See* id. NIO's economic interest was quantitatively and objectively disproportional to its equity, and NIO's control of BAC was so profound as to also render that determination objective. Regardless, if the accounting findings were viewed as subjective opinions (they weren't), Defendants did not believe their own statements as they purposefully created BAC to accelerate revenue recognition.

Defendants' cited cases do not support their claim that VIE analyses are subjective; none even concern VIEs. *See In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-cv-1545 (LAK), 2020 WL 2787117, at \*1 (S.D.N.Y. Apr. 20, 2020) (case concerned, *inter alia*, classification of bonuses and deferred acquisition costs; no subjective falsity due to failure to plead materiality); *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 224 (S.D.N.Y. 2020) (reserve adequacy subjective); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110-12 (2d Cir. 2011) (goodwill subjective).

## III.   DEFENDANTS MADE MATERIAL MISREPRESENTATIONS

Because BAC was a VIE requiring consolidation, Defendants' statements about, *inter alia*, NIO's relationship with BAC and NIO's financials were materially misleading when made.

A.    **NIO Repeatedly Mispresented It Had "Limited Control" Over BAC, Failed to Disclose BAC As a VIE, And Reported Inflated NIO Revenue Figures**

Courts have found statements about VIE relationships like the ones at issue here actionable. In *In re Citigroup Inc. Sec. Litigation*, 753 F. Supp. 2d 206, 219, 235-36 (S.D.N.Y. 2010), the Court sustained statements downplaying Citigroup's "limited continuing involvement" with its VIE. *Id. See also Global Brokerage*, 2019 WL 1428395, at *11 (sustaining statements where defendant claimed involvement of multiple market makers when there was only one who received inside advantages). Defendants here, likewise, made misleading statements downplaying NIO's singular relationship to BAC, representing that "[w]e are 1 party out of this endeavor…not the main stakeholder….it's not going to affect our balance sheet." ¶134. But NIO was not merely "1 party of this endeavor", it controlled BAC, and BAC materially "affect[ed] [NIO's] balance sheet" (¶135) by allowing NIO to pull forward revenue. ¶¶53-62.[10]

In *Global Brokerage*, the court sustained the alleged statements about FXCM's relationship with Effex, a company created by a former FXCM employee and funded by FXCM. 2019 WL 1428395, at *4. Like here, after Effex was initially run by FXCM employee John Dittami, "under FXCM's guidance, Dittami created a new company, Effex" funded by FXCM. *Id*. at *2. The court found the plaintiffs sufficiently alleged that FXCM should have consolidated Effex:

> [FXCM] omitted material statements with respect to GAAP [as] a company must…consolidate another entity as a VIE when [*e.g.*] ***nominal owners of the entity [cannot] make decisions about the entity's activities that have a significant effect on the success of the entity***,…. Plaintiffs allege that [Effex] was "dependent on FXCM for its business."… ***the Court will not weigh in on this factual dispute***.

---

[10] NIO also never disclosed BAC was a VIE despite listing BAC as a related party (*see*, *e.g.*, ¶¶135(e), 137(h); 138, 139(c), 150, 186); "warned" of BAC failing to provide "high-quality services to our users" when BAC did not provide any real "services" to users (*see*, *e.g.*, ¶¶136, 137(c)); "warned" NIO could be harmed if BAC couldn't obtain future financing – when BAC was undercapitalized and would have to continually raise money to stay in business, with NIO's help (*see*, *e.g.*, ¶¶136, 137(d)); and signed misleading SOX certifications (*see*, *e.g.*, ¶¶160-161). These statements and omissions are also actionable.

> If true, this would strongly suggest that [FXCM] violated GAAP by not disclosing Effex as a VIE and consolidating [it].

*Global Brokerage*, 2019 WL 1428395, at *11. Similarly, BAC was "dependent on [NIO] for its business" and BAC's non-NIO owners were "unable to make decisions about [BAC's] activities that" could significantly affect the entity and did not "participate in [BAC's] residual returns" like NIO did. *Id*. at *11. Also, NIO "absorb[ed] the majority of the [VIE's] risks and rewards".[11]

NIO repeatedly used BAC to unlawfully pull forward and recognize material amounts of revenue, painting a misleading picture of its financials to unsuspecting investors. *Lea v. TAL Education Group* is instructive. In *TAL*, like here, a short-seller revealed an accounting scheme between a Chinese company and its subsidiaries and VIEs. The *TAL* plaintiffs alleged that "although on paper [defendant] owned only a minority position" in an entity, because defendant "controlled" it like a "subsidiary," reported revenues were overstated. 837 F. App'x 20, 26 (2d Cir. 2020). *See also id*. (Second Circuit found financial statements misleading as plaintiffs alleged "TAL in fact controlled Shunshun and therefore could not recognize an accounting profit"). *See also Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 881 (4th Cir. 2014) (must consolidate VIE if company "absorbs the majority of [its] risks and rewards"); *Citigroup*, 753 F. Supp. 2d at 235-36 (Citigroup "may…have an ownership interest" and "limited continuing involvement" with "certain [CDO] VIEs" were actionable statements as Citigroup exposed to absorbing CDO losses).

From November 7, 2020 through June 20, 2022, Defendants reported revenue and earnings figures that were misleading and thus actionable, because Defendants failed to consolidate BAC's revenues with NIO's as required. ¶213. If NIO properly recognized BAC's revenues, NIO could have only recognized the monthly payments received from consumers as they came in.

---

[11] *See also id*. (irrelevant that agency did not find FXCM violated GAAP since plaintiffs alleged Effex was VIE on different grounds). So too, the SEC's lack of further action is irrelevant as NIO misled the agency.

During 2021 alone, NIO recognized over $600 million in BAC revenue – a material 11% of NIO's 2021 $5.6 billion in revenue. ¶14. And BAC still owed NIO over a third of this $600 million at the end of 2021. ¶103. Most of this 11% was improperly recognized, well over the 5% quantitative materiality threshold, since BAC was paid on a 5 to 6.5 year schedule and NIO only should have recognized revenue on a monthly basis as it was paid. *See ¶¶39, 40; Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 487 (2d Cir. 2011) (quantitative materiality is typically above 5%); *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 475 (S.D.N.Y. 2018).

Defendants also included revenues when collection of "substantially all of the … consideration" was not probable. ¶39. Defendants' post-December 31, 2021[12] statements were misleading as it was unlikely NIO could collect the money BAC owed when it had an abysmal 0.36 debt ratio and BAC was dependent on others (including NIO) for financing. ¶¶112; 40.[13]

NIO's arguments about revenue collection are unpersuasive. NIO argues Plaintiffs don't allege BAC failed to pay NIO (Br. 19-20), but the GAAP analysis is if it is probable BAC could have paid NIO *at the time* the revenues were recognized, not if BAC did pay in hindsight. ¶¶39, 112. Even if BAC ultimately paid NIO that doesn't mean NIO could recognize the Debt as revenue. NIO also claims revenue need not be collectible "all at once" and BAC only needed capital day-to-day. Plaintiffs do not claim otherwise; they argue that BAC's 0.36 ratio and need for financing

---

[12] NIO confusingly argues that statements prior to December 31, 2021 were not misleading due to untimely revenue recognition under ASC 606, but Plaintiffs do not allege otherwise.

[13] Plaintiffs cited the Weineng Credit Report for BAC's shareholders equity figure of RMB 2 billion and BAC's working capital of negative RMB1.66 billion. *See* Br. 14 n.6; ¶¶103-104. NIO claims the Debt calculation is based on the report, but that is inaccurate. Br. 16 n.8. The only figure from the report in the Debt calculation is BAC's shareholder equity, which NIO does not dispute. NIO also claims Plaintiffs did not provide enough information about the report (Br. 14, 16), but it was obtained by a Chinese investigator since BAC is a Chinese company and NIO does not report BAC's financials. A copy is attached as Ex. D.

rendered it unable to fully pay NIO after December 31, 2021. ¶112 (current ratio is ability to pay debts). Finally, Plaintiffs do not "admit" (Br. 13, 19) BAC had enough capital. *See* ¶¶137(d).[14]

**B.        NIO Did Not Disclose All Relevant Information About BAC**

NIO claims it disclosed all relevant information about BAC and, thus, its statements were not false and misleading, but that is wrong and this argument fails. Although NIO disclosed the Debt, it did not reveal, *inter alia*, the Debt's effect on NIO's economic interest in BAC or that BAC's financials had to be consolidated with NIO's. *See Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 140 (S.D.N.Y. 2021) (this Court held defendants cannot mislead "provided [] the [] corrective facts are located somewhere in the public record"); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 583-84 (S.D.N.Y. 2010) (disclosing underlying information insufficient when discerning "true nature" needed more than "minimal diligence"); *Roofer's Pen. Fund v. Papa*, Civ. A. No. 16-2805, 2018 WL 3601229, at *10 (D.N.J. July 27, 2018) (disclosing underlying data did not satisfy GAAP); *Citigroup*, 753 F. Supp. 2d at 240.

Moreover, much of the information on BAC was not "disclosed" as it had to be retrieved from China, translated, and needed complex accounting analysis. *See, e.g.*, *Lea*, 837 F. App'x at 28 (multiple filings in different language and Chinese documents "not readily accessible"); *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 Civ. 4483(RCC), 2005 WL 735937, at *7 (S.D.N.Y. Mar. 30, 2005) (disclosures about accounting classifications insufficient where significance unclear and subject to interpretations); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993) ("buried" information not disclosed); *In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*, No. 14-cv-4471 (KMW), 2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016) (Chinese filings "not readily accessible"); *Flag Telecom*, 618 F. Supp. 2d at 325.

---

[14] NIO cannot cite Li knowledge of BAC's finances yet claim NIO was powerless to control BAC. *See* ¶83.

## IV.    THE COMPLAINT PLEADS A STRONG INFERENCE OF SCIENTER

### A.    Defendants Created BAC To Inflate NIO's Revenues

Plaintiffs sufficiently allege a strong inference of scienter as Defendants participated in a scheme, *i.e.*, knowing misconduct. Li openly admitted at BAC's launch that "hold[ing] the battery assets…will be too much a financial burden" for NIO and that it "needed" another entity to do the job. ¶60. Li's public statement, which hid that NIO's plan to recognize revenue through BAC was unlawful, strongly supports Defendants', and particularly Li's, scienter. *See Global Brokerage*, 2019 WL 1428395, at *10 (named defendants "heavily involved in the creation and funding of [VIE] Effex"). Li and Feng were "heavily involved in [BAC's] creation and funding" – and BAC exclusively served NIO. ¶¶59-62. *See also Cheng v. Canada Goose Hldgs. Inc.*, No. 19-CV-8204 (VSB), 2021 WL 3077469, at *9 (S.D.N.Y. July 19, 2021) (this Court noted that "deliberately illegal behavior" was probative of scienter).[15] *Cf. In re Allianz Global Inv. U.S. LLC Alpha Series Litig.*, 2021 WL 4481215, at *31 (S.D.N.Y. Sept. 30, 2021) (admission supported scienter).[16]

NIO's case citations are inapposite because, unlike here, they involve conclusory scienter allegations based solely on GAAP violations or concerned subjective or immaterial GAAP considerations. *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009) (GAAP violations immaterial); *Woolgar*, 477 F. Supp. 3d at 239 (allegations not "coupled with evidence of…intent"); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 186-87 (2d Cir. 2014) (failure to write down assets that were designed to never lose more than 2% of their value was subjective and immaterial); *City of Omaha*

---

[15] Lu (BAC's General Manager and Director, Wuhan Weilai director and NIO's subsidiary's Battery Operation Supervisor) also related NIO's plan to shed battery assets. ¶72.

[16] As NIO's CEO and CFO, Li and Feng's state of mind can be imputed to NIO. *See Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008).

*Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421-22 (S.D.N.Y. 2020) ("upper management" role in GAAP violations insufficient). Here, Plaintiffs allege a spoken and calculated plan to accelerate revenue recognition and pull NIO out of a liquidity crisis.[17]

### B.    Defendants Were Well Aware of VIE Reporting Requirements

Scienter is further demonstrated because it was specifically Li and Feng's responsibility to disclose BAC as a VIE and consolidate it. ¶32. Defendants knew BAC was a VIE and consolidated other VIEs' financial results. *See supra* 8-10; ¶¶156, 157, 190, 191. NIO tries to write off this allegation as if it stood alone. Br. 23. It does not – Defendants' intimate knowledge of VIE regulations must be viewed in tandem with their scheme to hide BAC's VIE status.

### C.    NIO's Calculated 19.84% BAC Equity Further Supports Scienter

On August 16, 2021, Defendants set NIO's equity interest at a careful 19.84%, just under the 20% interest threshold that Defendants knew triggered a presumption that NIO significantly controlled BAC. ¶57. Because NIO was so close to the 20% figure, even the slightest increase in NIO's economic interest in BAC would push NIO over the edge. NIO claims setting its interest in BAC just below 20% figure shows it "paid attention to [] accounting rules" (Br. 23), but the fact that Defendants knew the rules and gamed them only strengthens the inference of scienter.[18]

### D.    Defendant Feng Deceived the SEC

After the Report, the SEC asked NIO about its VIE analysis for BAC. ¶128. Feng responded for NIO, citing BAC's articles of incorporation and stating that each shareholder's (including NIO) voting rights were proportional to their "***equity interest***". ¶¶130-132. The SEC

---

[17] NIO argues that Plaintiffs do not cite an internal report or internal communication to support scienter. Br. 22. First, those are not required, they are simply some ways to plead scienter. Second, Plaintiffs allege a strong inference of scienter based on stronger inferences than reports – Defendants' actual knowledge.

[18] NIO claims it increased its BAC equity at one point and, thus, wasn't keeping it "artificially low". Br. 23. NIO misses the point – it manipulated its equity interest and hid its economic interest.

missed Feng's sleight of hand and his ignoring "*economic interest*". NIO could control its BAC equity interest, as shown by dipping just below the 20% figure, but NIO needed to conceal its huge economic interest. Feng's deceptive statement to the SEC strengthens the inference of his scienter.

### E.    Defendants Were Motivated to Commit Fraud

#### 1.    Defendants Needed to Address NIO's Liquidity Crisis

A motive to raise capital to get out of a liquidity crisis supports an inference of scienter. *See, e.g., Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*, 56 F. Supp. 3d 549, 555 (S.D.N.Y. 2014) (motive "to counter negative perceptions about...financial condition [and] liquidity problems" supported scienter); *S.E.C. v. Gruss*, 859 F. Supp. 2d 653, 670 (S.D.N.Y. 2012) (motive to address "liquidity constraints" supported scienter). On February 27, 2020, NIO was in danger of being out of business in the next year. ¶52. Defendants were motivated to create BAC to address this crisis, accelerate revenue recognition, and avoid a future crisis. ¶¶7, 12, 227. NIO claims such a motive is "conclusory" (Br. 20), but that ignores that as BAC paid NIO a fraction of the battery revenue NIO recognized, NIO was in continual need of capital. Thus, Plaintiffs describe the "unique connection between the fraud and the [benefit]" received, which further supports scienter. *ECA*, 553 F.3d at 201 n.6.

NIO argues incorrectly that there is no motive here because the liquidity crisis was over by August 2020 since, as of June 30, 2020, NIO's ratio of current assets to liabilities was approximately 1.16. Br. 4. NIO deceptively uses this reference point without informing the Court that less than 24 hours earlier, on June 29, 2020, NIO received RMB 4.8 billion in "cash injections" artificially boosting its ratio.[19] Nevertheless, NIO cannot raise fact disputes about its current ratio at various times, and ignores that these "cash injections" were only a band-aid. ¶50.

---

[19] *See* "Substantial Completion of Cash Injections into NIO China" (https://ir.nio.com/news-events/news-releases/news-release-details/nio-announces-substantial-completion-cash-injections).

Defendants' case citations on motive are readily distinguishable from the facts here. *See Cheng*, 2021 WL 3077469, at *10 (this Court found motives held by "virtually all corporate insiders" and "high-level positions alone" insufficient); *Golla v. Neovasc, Inc.*, 2023 WL 2469770, at *2 (2d Cir. Mar. 13, 2023) (motive to earn bonuses); *Rotunno v. Wood*, No. 22-502, 2022 WL 14997930, at *2 (2d Cir. Oct. 27, 2022) (motive to conceal material weaknesses); *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 531-32 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009) (motive to raise funds could be enough in "particular circumstances"); *Gissin v. Endres*, 739 F. Supp. 2d 488, 512-13 (S.D.N.Y. 2010) (general motive insufficiently); *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 183 (E.D.N.Y. 2017) (same); *Lehmann v. Ohr Pharm., Inc.*, 830 F. App'x 349, 352 (2d Cir. 2020) (same).

## 2.    Defendants Needed to Raise Capital

NIO's need to raise capital through offerings furthers scienter. *See In re Silvercorp Metals Sec. Litig.*, 26 F. Supp. 3d 266, 276 (S.D.N.Y. 2014) (motive to raise capital through a stock offering probative of scienter); *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 474 (S.D.N.Y. 2013) (secondary offering). Defendants raised over $3 billion during the Class Period in offerings. ¶228. NIO needed a high stock price for these offerings and continually needed money as BAC's Debt was significant and NIO's business was costly to run. NIO also needed to look good on paper to help secure needed financing for BAC.

## F.    Collectively, the Evidence of Scienter is Overwhelming

The scienter inquiry is whether the facts "collectively" give rise to a strong inference of scienter". *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). A scienter inference "must be cogent and compelling" but "not [] irrefutable…or even the 'most plausible of competing inference[s].'" *Id.* at 324. A "tie goes to the plaintiff." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196 (S.D.N.Y. 2010). Together, Plaintiffs' allegations show an

inference of scienter at least as strong as an inference of innocence: Li admitted NIO's plan to create BAC to shed NIO's battery assets; Defendants formed BAC to serve NIO; NIO's revenues skyrocketed post-BAC as NIO unlawfully recognized revenue; NIO's economic interest in BAC was disproportionate to its equity interest due to the Debt; NIO reported other entities as VIEs; and Defendants were scrambling to address a liquidity crisis.

The competing inference of innocence in the face of the overwhelming evidence here is too good to be true. To find this inference equal to the inference of scienter is untenable.

### G.    NIO's Laundry List of Excuses for Defendants' Fraud Fails

NIO looks everywhere except in the mirror for excuses for its fraud. NIO passes the buck to its auditor PwC ZT, but concedes that "management is responsible for [] consolidated financial statements". ¶¶32-34. Indeed, "financial statements are management's responsibility" and the auditor only "express[es] an opinion on the [] statements." *S.E.C. v. Spiegel, Inc.*, 2003 WL 22176223, at \*95 (N.D. Ill. Sept. 15, 2003). *See also Colonial BancGroup Inc. v. PwC LLP*, No. 2:11-cv-746-BJR, 2017 WL 8890271, at \*11 (M.D. Ala. Dec. 28, 2017). *Cf. Annecca Inc. v. Lexent, Inc.*, 307 F. Supp. 2d 999, 1007 (N.D. Ill. 2004) (auditors not "responsible" for creating GAAP-compliant balance sheets"). Courts reject that auditor signoff exonerates executives.[20]

Defendants' cases supposedly holding that auditor signoff absolves companies of fraud were all very different. *See In re Turquoise Hill Res. Ltd.*, No. 13 Civ. 8846 (LGS), 2014 WL

---

[20] *See Chi. Bridge*, 2018 WL 2382600, at \*7 (auditor's lack of "objection [] does not change the analysis"); *Silver Wheaton*, 2016 WL 3226004, at \*11 (scienter pled although "Deloitte and [PwC] reviewed [] financial[s]"). NIO concedes the PCAOB did not oversee PwC ZT, further weakening any import of its audit. *See* 2021 20-F at 15 ("our auditor is [] not inspected by [] PCAOB." Significantly, some of this country's most notorious securities frauds were accompanied by clean audit opinions. The Court should not draw an inference in favor of Defendants based on a one-page auditor opinion without "evaluat[ing] what [] passed between [NIO] and the auditor". *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2012 WL 6000923, at \*8 (N.D. Cal. Nov. 30, 2012). That requires discovery. *Id.* Separately, NIO's VP of Finance also worked in PwC's prior to joining NIO. *See* (http://usstock.jrj.com.cn/2019/1 1/06235028362368.shtml).

7176187, at *6 (S.D.N.Y. Dec. 16, 2014) (Canadian parent's accounting errors were from Mongolian subsidiary; parent relied on subsidiary's auditor); *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 (RJS), 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012) (auditor did not require restatement of company's "fair value" analysis of complex securities), *aff'd sub nom. City of Pontiac Police & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); *In re Iconix Brand Grp., Inc.*, No. 15 Civ. 4860 (PGG), 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) (no link of GAAP violations with evidence of "intent").[21]

Similarly, NIO's lack of a restatement does not exonerate it. Indeed, cases do "not end [without restatement] when [plaintiff] otherwise [meets PSLRA] pleading requirements." *In re Silver Wheaton Corp. Sec. Litig.*, No. CV15-5146-CAS(JEMx), 2016 WL 3226004, at *11 (C.D. Cal. June 6, 2016) (scienter without restatement); *Global Brokerage*, 2019 WL 1428395, at *12 (rejecting defendants' argument that lack of restatement meant no securities fraud in VIE context); *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002). The Audit Committee's rubber-stamp is also of no moment as "officers [] are not exonerated when their [] audit committee [found] nothing wrong in [] accounting practices" as that "would create a huge [] loophole in [the] securities law[s]". *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008). As NIO's committee was conflicted, its findings are suspicious. ¶¶120, 124-126.

The fact that the SEC has not yet initiated an action does not help NIO either. The SEC has stated that when it decides not to take action, this "must in no way be construed as indicating that the party has been exonerated or that no action may ultimately result." 17 C.F.R. § 202.5(d). *See also* sec.gov/divisions/corpfin/cffilingreview ("[t]he Division's review process is not a guarantee

---

[21] A report shows audit deficiencies by Chinese arms of Big 4 companies, including PwC. *See* May 10, 2022 Reuters article (accounting watchdog "found unacceptable deficiencies in audits of U.S.-listed Chinese companies [*e.g.*]…[PwC] in Hong Kong").

that the disclosure is complete and accurate — responsibility for complete and accurate disclosure lies with the company and others involved in the preparation of a company's filing"). *See also LDK*, 584 F. Supp. 2d at 1245 (SEC letter "did not 'clear' LDK of wrongdoing [and] did not [explain why it was not] pursu[ing] LDK"). Moreover, the SEC was misled by Feng's response that acknowledged yet refused to apply the objective economic interest standard and instead referred only to *equity*. ¶37.[22] The SEC is not perfect; it missed Madoff and it missed NIO as well.

Finally, Defendants shoot the messenger, an analyst with a short position. This argument also fails. Beyond the impermissible fact questions the Report raises (*In re EHang Holdings Ltd. Sec. Litig.*, 2022 WL 17718546, at *7 (S.D.N.Y. Dec. 15, 2022)), this Court recognized in *Sachsenberg v. IRSA Invesiones y Repr. Sociedad Anónima* that courts hold "a short seller report does not implicate the same skepticism as a traditional anonymous source." 339 F. Supp. 3d 169, 179-80 (S.D.N.Y. 2018). And unlike the *Sachsenberg* plaintiff, Plaintiffs ***do not rely on the Report at all*** other than as the conduit through which the truth was partially disclosed. Plaintiffs investigated the Report's allegations and pled what they corroborated. ¶1. NIO's claim that Plaintiffs "base[] their claims on unsubstantiated [short seller] allegations" is, thus, false. *In re Longwei Petr. Inv. Hold. Ltd.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014).

Defendants' citations on short seller reports fail. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801-02 (S.D.N.Y. 2020) (allegations "recapitulate[d]" report); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015) (complaint relied "almost entirely" on report), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

---

[22] *See* ECF No. 54-9 (Fumerton Ex. I at 16-17) (SEC asked whether "voting rights of some [BAC] investors [were] not proportional to their *economic interest*", NIO replied that "[a]ccording to [BAC's] articles of incorporation…each shareholder's obligation to absorb the expected losses and rights to expected residual returns of [BAC] are in proportion to the respective shareholder's *equity interest*").

## V.    PLAINTIFFS SATISFY LOSS CAUSATION PLEADING REQUIREMENTS

Plaintiffs must only satisfy Rule 8(a)'s notice pleading for loss causation. *See Micholle v. Opthotech Corp.*, No. 17-CV-210 (VSB), 2019 WL 4464802, at *n.20 (S.D.N.Y. Sept. 17, 2019) (Broderick, J.). Plaintiffs can plead loss causation by alleging a "negative[] [reaction] to a corrective disclosure of the fraud" or that the loss caused by the materialization of the concealed risk. *Goldman Sachs*, 545 F. Supp. 3d at 146.  Plaintiffs have done both.  *See also id*. (causation generally not decided on motion to dismiss).

Defendants' misleading statements relate to NIO's BAC relationship and wrongful accounting relating to BAC. The partial disclosure on June 28, 2022 revealed BAC was a VIE used by NIO to accelerate revenues. NIO securities fell 2.5% on this news. ¶¶234-236. NIO quickly acted to mitigate the harm, undermining NIO's claim that the market did not care (Br. 2). Further undermining this assertion, on July 11, 2022, NIO revealed it was forming a committee to further investigate the Report's claims, acknowledging their seriousness. NIO securities fell almost 9%. ¶¶238-239. In *Goldman Sachs*, this Court found two partial disclosures (followed by 2.75% and 3.9% drops) satisfied causation requirements – and rejected as a premature fact dispute defendants' argument that news before the 2.75% drop had already apprised the market of the truth. 545 F. Supp. 3d at 147, 149. The Court should make the same finding here.

NIO further claims there was nothing revealed since the Report contained public information. Not so. In *TAL*, the Second Circuit held that "filings [] in a different language and Chinese court judgments [were] not readily accessible". 837 F. App'x at 28. That same issue is present here. *See also Int'l Paper*, 985 F.2d at 1199 ("buried" information insufficient); *China Mobile*, 2016 WL 922711, at *9 n.12 (Chinese filings "not readily accessible"). Moreover, having to untangle complex accounting isn't full disclosure. *See*, *e.g.*, *Omnicom*, 2005 WL 735937, at *7.

NIO's cases in support of its claim the Report revealed no new information are inapposite. *See Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 497-98 (S.D.N.Y. 2016) (report was "effort to summarize and interpret [] SEC filings"); *Colbert v. Rio Tinto Plc*, No. 17 Civ. 8169 (AT) (DCF), 2022 WL 355400, at *3 (S.D.N.Y. Feb. 7, 2022) (plaintiffs alleged the news, not disclosure, caused drop); *compare* ¶¶230-239 ("[NIO's price] decline…direct result of…misrepresentations [] revealed").

NIO also argues that an "internal investigation" announcement cannot serve as a corrective disclosure, citing *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012). But NIO's disclosure showed there was far more to the Report than NIO first indicated. *See Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 620 (S.D.N.Y. 2015) ("the disclosure of an investigation into a particular business practice can be sufficient to allege [] causation"); *Bos. Ret. Sys. v. Alexion Pharm., Inc.*, 556 F. Supp. 3d 100, 140 (D. Conn. 2021) ("audit committee[] investigation" announcement sufficient for causation). If the market reacted with a "collective shrug" to the Report, as Defendants wrongly suggest, there would be no need to investigate any further. That was not the case as even the SEC was interested.[23]

## CONCLUSION

For the foregoing reasons, NIO's Motion should be denied in its entirety.[24]

---

[23] Plaintiffs also plead materialization-of-risk, in which "a plaintiff need only plead … 'that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement.'" *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 422-23 (S.D.N.Y. 2011). Here, each disclosure caused the risk of Defendants' false accounting to materialize. *See* ¶¶233-239.

[24] As the Complaint states a §10(b) claim, Plaintiff's §20(a) claim stands. *Cf.* Br. at 25 n. 15. If the Court grants the Motion, Plaintiffs should be granted leave to amend. *See* Fed. R. Civ. P. 15(a) ("leave [] freely given"). Plaintiffs amended the originally filed complaint "as a matter of course … before a responsive pleading [was] served." *Id.* There has been no undue delay here because Plaintiffs are not aware of any deficiencies in the Complaint that need curing. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Dated: June 30, 2023                    Respectfully submitted,

                                        **BERNSTEIN LIEBHARD LLP**

                                        /s/ Laurence J. Hasson

                                        _____

                                        Laurence J. Hasson
                                        Joseph R. Seidman, Jr.
                                        Jeffrey R. McEachern
                                        10 East 40th Street
                                        New York, NY 10016
                                        Telephone: (212) 779-1414
                                        Facsimile: (212) 779-3218
                                        Email:  lhasson@bernlieb.com
                                               seidman@bernlieb.com
                                               jmceachern@bernlieb.com

                                        *Lead Counsel for Lead Plaintiff Dr. Mohammad*
                                        *Siddiqui, Additional Named Plaintiff Barry King,*
                                        *and the Proposed Class*

00748857;V1                                   26

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

<u>/s/ Laurence J. Hasson</u>

00748857;V1