# EXHIBIT A

www.pwc.com

# Consolidation

Partially updated July 2022



to a third party, the right to appoint the manager automatically also transfers to the third party. This would be indicative of the decision-making rights residing in the GP interest.

☐ **Does the general partner have the legal right to terminate the investment management agreement?** If the general partner has the legal right to terminate the management agreement at any time and at its sole discretion, the general partner has most likely retained the substantive decision-making rights over the limited partnership. All factors, including penalties associated with early termination, should be considered to determine whether or not the termination right is substantive.

If, after considering the factors described above, it is determined that the outsourced decision maker has substantive decision-making rights (as opposed to the general partner), the limited partners must have substantive kick-out or participating rights over the outsourced decision maker. Otherwise, Characteristic 2 will be present and the limited partnership will be a VIE.

## 4.5   VIE Characteristic 3: equity with nonsubstantive voting rights

**ASC 810-10-15-14(c)**

The equity investors as a group also are considered to lack characteristic (b)(1) if both of the following conditions are present:

1. The voting rights of some investors are not proportional to their obligations to absorb the expected losses of the legal entity, their rights to receive the expected residual returns of the legal entity, or both.

2. Substantially all of the legal entity's activities (for example, providing financing or buying assets) either involve or are conducted on behalf of an investor that has disproportionately few voting rights. This provision is necessary to prevent a primary beneficiary from avoiding consolidation of a VIE by organizing the legal entity with nonsubstantive voting interests. Activities that involve or are conducted on behalf of the related parties of an investor with disproportionately few voting rights shall be treated as if they involve or are conducted on behalf of that investor. The term *related parties* in this paragraph refers to all parties identified in paragraph 810-10-25-43, except for de facto agents under paragraph 810-10-25-43(d).

For purposes of applying this requirement, reporting entities shall consider each party's obligations to absorb expected losses and rights to receive expected residual returns related to all of that party's interests in the legal entity and not only to its equity investment at risk.

An entity is considered a VIE under Characteristic 3 if both of the following criteria are met:

☐ Criterion 1: The voting rights of some investors are not proportional to their economic interest (i.e., obligations to absorb the entity's expected losses and rights to expected residual returns).

☐ Criterion 2: Substantially all of the entity's activities either involve or are conducted on behalf of the investor(s) with disproportionately fewer voting rights.

This characteristic is intended to identify entities that are structured so that an entity can avoid consolidation under the voting interest model by providing nonsubstantive voting rights to another party. In essence, this provision is meant to catch potential abuses of the voting interest model (e.g., to avoid consolidation) where the voting rights held by the entity's investors are not useful in identifying which party has a controlling financial interest in the entity being evaluated for consolidation.

### 4.5.1    Criterion 1: disproportionate voting and economics

Under Criterion 1, each equity investor should be evaluated individually to determine whether its obligation to absorb the entity's expected losses and/or receive the entity's expected residual returns are in proportion to that investor's voting rights. Characteristic 3 is different from the other five characteristics of a VIE in that all variable interests held by the holders of equity at risk must be considered, and not just the voting rights and economics related to each investor's equity investment.

Related parties should not be considered in the evaluation of Criterion 1, but should be considered in an evaluation of Criterion 2 (discussed below).

When evaluating whether Criterion 1 has been met, we believe an investor's voting rights and economics are not required to be identical, but should generally be approximately the same, to be considered proportionate. Judgment should be applied based on the facts and circumstances.

Question CG 4-5 addresses whether Criterion 1 is met when a reporting entity's economic interest in an entity is greater than its relative voting interest.

### Question CG 4-5

If a reporting entity's economic interest in an entity is greater than its relative voting interest, is Criterion 1 met?

#### PwC response

The disproportionate voting and economic interest criterion was included to identify entities designed with nonsubstantive voting rights. It is the intent of GAAP to subject those entities to the "power" and "economics" model established in ASC 810-10. In situations where the interests are disproportionate, it should not be automatically assumed that the criterion is met. Additional analysis should be performed to determine whether the entity's voting rights would be substantively different if its relative voting rights mirrored its economic interest.

For example, if an investor held a 25% economic interest in an entity but was limited to exercising 15% of its relative voting rights, a reporting entity should consider whether that investor's ability to influence or participate in the entity's operating or financial decisions would be substantively different if the investor held 25% of the entity's relative voting rights. If the investor's ability to influence or participate in the entity's operating or financial decisions would not be substantively different if it held 25% of the entity's relative voting interests, then it should not be assumed that the investor's voting and economic interests are disproportionate (i.e., that Criterion 1 is met).

When an investor's economic and voting interests straddle 50% (i.e., 48% voting rights and 52% economics), its voting and economic interests should not ordinarily be considered proportional.

Generally, an investor's ability to exercise voting rights over an entity would be substantively different when its voting interest crosses the 50% threshold.

In practice, joint ventures and partnerships frequently meet this criterion as the equity investors typically have other variable interests in the entity that create economics that are disproportionate to their voting rights.

Based on a literal read of the guidance, evaluation of Criterion 1 would require a comparison of each participant's variable interests to their voting interest, which would necessitate the determination of all expected losses and expected residual returns for the entity and for each investor. However, in some circumstances, detailed analyses may not be necessary. For example, if one party clearly has an economic participation of 60% or greater, but only has a noncontrolling 50% voting interest, Criterion 1 would be met (i.e., the voting interests and economic interests would be disproportionate). Criterion 2 would then need to be evaluated to determine if the entity should be considered a VIE.

Conversely, if one party has 50% of the vote and 40% of the equity, but also has a variable interest via a long-term purchase contract, a detailed calculation may be required to determine if the equity investor's incremental economic exposure through the purchase contract causes the equity investor to be exposed to greater than 50% of the entity's expected losses and residual returns.

The determination of the level of voting rights may require judgment, since, in many cases, voting percentages are not defined by the underlying agreements.

Question CG 4-6 addresses the level of voting rights investors are deemed to hold when the investors agree to all significant operating decisions, but their relative ownership interests are not equal.

## Question CG 4-6

If a partnership with three investors operates in a manner that requires all three investors to agree to all significant operating decisions, what level of voting rights should the partners be considered to hold if their relative ownership interests are not equal?

### PwC response

Even though the partners' legal ownership percentages may vary, we believe the entity is under joint control and each partner would have 33.3% of the partnership's voting interests.

In this scenario, when assessing whether Criterion 1 of Characteristic 3 has been met, the analysis should focus on whether the governance of the entity would be substantively different if voting rights were exactly equal to the investor's economic interest. If the governance of the entity would be substantively different, then Criterion 1 of Characteristic 3 would be met.

To further understand the application of Criterion 1, consider Example CG 4-19, Example CG 4-20, and Example CG 4-21.

## EXAMPLE CG 4-19

Determining whether a majority investor's interest is disproportionate

Company A holds a 65% equity interest in Entity 1 and Company B holds the remaining 35% equity interest. Company A and Company B share in Entity 1's profits and losses in proportion to their relative equity investment. Entity 1's governing documents include specific provisions providing Company B with approval rights over the substantive operating decisions of Entity 1 (i.e., joint control).

Is Criterion 1 met?

*Analysis*

Yes. Entity 1's governing documents provide Company A with a 50% vote over key operating decisions. If Company A's voting rights equaled its 65% economic interest, its right to govern Entity 1 would be substantively different. Consequently, Criterion 1 would be met. If Criterion 2 is also met (i.e., substantially all of the entity's activities either involve or are conducted on behalf of Company A and its related parties), Characteristic 3 would be present and Entity 1 would be considered a VIE.

## EXAMPLE CG 4-20

Determining whether a majority investor's interest is disproportionate

Company A is an equity investor in Corporation X, holding 55% of Corporation X's voting interests. Through its 55% voting interest, Company A is able to control Corporation X. Company A is exposed to 60% of Corporation X's profits and losses.

Is Criterion 1 met?

*Analysis*

No. Although Company A's voting rights (55%) and exposure to Corporation X's economics (60%) are not exactly equal, Company A's voting and economic interests would be considered proportional since control resides with Company A at either the 55% or 60% level.

## EXAMPLE CG 4-21

Determining whether other interests held by a 50% equity investor cause disproportionality

Company A and Company B each contributed $20 million in cash for 50% of Corporation X's common stock. In addition, Company A loaned $50 million to Corporation X in return for a note receivable. Company A therefore has two variable interests in Corporation X: (1) an equity investment and (2) a note receivable from Corporation X.

Is Criterion 1 met?

*Analysis*

Most likely. While it is likely that the note receivable absorbs little variability in the change in Corporation X's net assets given its seniority in Corporation X's capital structure (i.e., it exposes

Company A to little credit risk), it would be required to absorb very little variability to increase Company A's total economic exposure above 50%.

### 4.5.2    Criterion 2: evaluating the "substantially all" concept

For Characteristic 3 to be present, Criterion 2 must also be met. Meeting this criterion requires substantially all of an entity's activities to involve or to be conducted on behalf of the investor (and its related parties) with disproportionately few voting rights. We believe an evaluation of whether this criterion has been fulfilled should be consistent with the evaluation performed under the business scope exception given the consistency of the "substantially all" terminology used (refer to CG 2.3.4 for discussion of the business scope exception).

As a general rule, we believe this assessment should be primarily qualitative.

Figure CG 4-3 lists indicators to consider in our evaluation (this is the same list of indicators included in CG 2.3.4):

## Figure CG 4-3
Indicators of whether the substantially all criterion has been met

| Strong indicators[1] | Other indicators[1] |
|---|---|
| ☐ The reporting entity sold assets to the entity in an effort to remove underperforming assets from the reporting entity's balance sheet. | ☐ The reporting entity sold assets to the entity. |
| ☐ The entity's major activities include selling **substantially all** of its products to the reporting entity under long-term contracts. | ☐ The entity's major activities include selling a **majority** of its products to the reporting entity, and these arrangements are expected to continue either because of long-term contracts or for other reasons. |
| ☐ The entity's major activities include purchasing **substantially all** of its purchased products from the reporting entity. | ☐ The entity's major activities include purchasing a **majority** of its purchased products from the reporting entity. |
| ☐ The reporting entity holds a non-reciprocal, fixed-price or "in-the-money" call option on the other investors' equity investments, and/or the other investors have a fixed-price or "in-the-money" put option whereby they can put their investments to the reporting entity. | ☐ The reporting entity holds a non-reciprocal (or fair value) call option on the other investors' equity investments, and/or the other investors have a similarly priced, non-reciprocal put option. |
| ☐ The reporting entity is obligated to provide **substantially all** of any additional capital contributions that may be necessary to cover operating shortfalls. | ☐ The reporting entity is obligated to provide a **majority** of any additional capital contributions that may be necessary to cover operating shortfalls. |

| Strong indicators[1] | Other indicators[1] |
|---|---|
| ☐ The entity performs research and development activities, and the reporting entity has an economic interest (e.g., through a purchase option) in the results of the research that constitutes **substantially all** of the entity's activities. | ☐ The entity performs research and development activities, and the reporting entity is in a business that could capitalize on the results of the research that constitutes a **majority** of the entity's activities. |
| ☐ The reporting entity has outsourced operations to the entity, constituting **substantially all** of the entity's activities. | ☐ The reporting entity has outsourced to the entity operations that constitute a **majority** of the entity's activities. |
| ☐ **Substantially all** of the entity's assets are leased to the reporting entity. | ☐ A **majority** of the entity's assets are leased to the reporting entity. |
| ☐ The principal activity of the entity is to provide financing (e.g., loans or leases) to the reporting entity's customers. | ☐ A **majority** of the entity's activities involve providing financing (e.g., loans or leases) to the reporting entity's customers. |
| ☐ The principal purpose of the entity is to conduct a business that is uniquely complementary to a significant business operation of the reporting entity and is not similar to activities of other participants in the entity. | ☐ The principal purpose of the entity is to conduct a business that is more closely related to a significant business operation of the reporting entity and only broadly similar to activities of one or more of the other participants in the entity. |
| ☐ The economics (e.g., capital at risk, participation in profits, etc.) are heavily skewed (e.g., close to 90% or greater) toward the reporting entity. | ☐ The economics (e.g., capital at risk, participation in profits, etc.) are weighted (e.g., greater than 60%) toward the reporting entity. |

[1] With respect to evaluating these indicators, the term "reporting entity" includes the reporting entity's related parties (as defined in ASC 810-10-25-43).

In contrast to Criterion 1, the investor must combine interests held by its related parties with its own interests when assessing Criterion 2 (refer to CG 5.4 for a detailed discussion of related parties).

If several of the "Other indicators" are present, the reporting entity should consider whether or not the requirements of Criterion 2 have been met. There are no broad rules of thumb that can be used to shortcut the evaluation required under Criterion 2. Instead, reporting entities will need to evaluate the relevant facts and circumstances surrounding each individual situation. Absent mitigating factors (i.e., indicators that point to a different conclusion), we believe that the presence of a single item from the "Strong indicators" column may be sufficient to support a conclusion that substantially all of the activities of the entity either involve or are conducted on behalf of the reporting entity.

At other times, multiple strong indicators may need to be present to reach the same conclusion. There are no "bright lines" and this assessment requires judgment and will be based on facts and circumstances. Some have suggested that the phrase "substantially all" should be interpreted to mean that 90% or more of the economics of the entity relate or accrue to the benefit of a particular party. We believe that such a quantitative measure is only one of many factors that should be considered in evaluating this criterion. However, we recognize that there may be circumstances where the economics

of the arrangement are so skewed in the direction of one reporting entity that a quantitative analysis may override other considerations.

## 4.6 VIE Characteristic 4: lack of obligation to absorb losses

Non-equity interests (e.g., debt) issued by voting entities generally do not absorb the entity's losses until its equity interests are fully depleted. The VIE model indicates that an entity is considered a VIE if, as a group, the holders of the equity investment at risk lack the following:

> **ASC 810-10-15-14(b)(2)**
>
> The obligation to absorb the expected losses of the legal entity. The investor or investors do not have that obligation if they are directly or indirectly protected from the expected losses or are guaranteed a return by the legal entity itself or by other parties involved with the legal entity. See paragraphs 810-10-25-55 through 25-56 and Example 1 (see paragraph 810-10-55-42) for a discussion of expected losses.

This assessment should focus on whether the entity's equity investors are exposed to its expected losses on a "first-dollar loss" basis.

> **Excerpt from ASC 810-10-15-14(b)**
>
> If interests other than the equity investment at risk provide the holders of that investment with these characteristics or if interests other than the equity investment at risk prevent the equity holders from having these characteristics, the entity is a VIE.

An evaluation of whether Characteristic 4 is present should focus on the equity interests as opposed to the identity of the equity investors. In most cases, a reporting entity should be able to make this assessment qualitatively.

When other variable interests that do not qualify as equity at risk absorb the entity's expected losses before its equity at risk is fully depleted, we do not believe the entity should automatically be presumed to be a VIE.

We believe Characteristic 4 may be present if a potential VIE is designed such that its equity interests do not fully absorb the entity's expected losses on a first-dollar loss basis. If other variable interests begin sharing in the entity's expected losses before the equity investment at risk is fully depleted, and that sharing is part of the entity's design, then the entity may be a VIE. An entity may also be a VIE under Characteristic 4 if it issued equity with puttable characteristics that are embedded in the terms of the interest.

### 4.6.1    Impact of implicit variable interests

ASC 810-10-25-48 through ASC 810-10-25-54 address if and when a reporting entity holds an implicit variable interest in a potential VIE. The existence of an implied variable interest may affect the determination of whether an entity should be considered a VIE, particularly with respect to Characteristic 4. For example, if a variable interest holder implicitly guaranteed the value of a