# EXHIBIT B

**Financial reporting developments**

*A comprehensive guide*

# Consolidation

Determination of a controlling financial interest and accounting for changes in ownership interests

**May 2020**



2.   Substantially all of the legal entity's activities (for example, providing financing or buying assets) either involve or are conducted on behalf of an investor that has disproportionately few voting rights. This provision is necessary to prevent a **primary beneficiary** from avoiding consolidation of a VIE by organizing the legal entity with nonsubstantive voting interests. Activities that involve or are conducted on behalf of the related parties of an investor with disproportionately few voting rights shall be treated as if they involve or are conducted on behalf of that investor. The term related parties in this paragraph refers to all parties identified in paragraph 810-10-25-43, except for de facto agents under paragraph 810-10-25-43(d).

For purposes of applying this requirement, reporting entities shall consider each party's obligations to absorb expected losses and rights to receive expected residual returns related to all of that party's interests in the legal entity and not only to its equity investment at risk.

The last criterion to consider when evaluating whether an entity is a VIE is whether the entity was established with non-substantive voting rights. This criterion is known as the anti-abuse test. The purpose of this test is to prevent a reporting entity from avoiding consolidation of an entity by organizing the entity with non-substantive voting interests.

Under this test, an entity is a VIE if (1) the voting rights of some investors are not proportional to their obligations to absorb the expected losses of the entity, their right to receive the expected residual returns or both and (2) substantially all of the entity's activities either involve or are conducted on behalf of an investor that has disproportionately few voting rights, including its related parties and certain de facto agents. We refer to each of these conditions as Condition 1 and Condition 2, which are described further below.

---

**Illustration 7-47:**    **Anti-abuse test**

Company A, a manufacturer, and Company B, a financier, establish an entity. The operating agreement states that the entity may purchase only Company A's products. Company A's and Company B's economic interests in the entity are 70% and 30%, respectively. Company B has 51% of the outstanding voting rights.

**Analysis**

The entity is a VIE because substantially all of the entity's activities (i.e., buying Company A's products) are conducted on behalf of Company A, whose economic interest exceeds its voting rights.

---

A disproportionate interest does not automatically lead to a conclusion that an entity is a VIE. Substantially all of an entity's activities must involve or be conducted on behalf of the investor that has disproportionately few voting rights for an entity to be a VIE. The Variable Interest Model does not provide guidance to determine what constitutes substantially all of an entity's activities. We believe this determination will be based on the individual facts and circumstances and will require the use of professional judgment.

## 7.4.1    Condition 1: Votes are disproportionate to economics

| The entity does not have enough equity to finance its activities without additional subordinated financial support. | The equity holders, as a group, lack the characteristics of a controlling financial interest. | The entity is structured with non-substantive voting rights (i.e., anti-abuse clause). |

▸   An entity is a VIE if both of the following conditions are met:
  ▸  The voting rights of some investors are not proportional to their obligations to absorb the expected losses of the legal entity, their right to receive the expected residual returns or both.
  ▸  Substantially all of the entity's activities either involve or are conducted on behalf of an investor that has disproportionately few voting rights, including that investor's related parties and certain de facto agents.

We believe that any disproportionality between an investor's voting rights and its obligation to absorb the entity's expected losses or receive its expected residual returns meets Condition 1 of the anti-abuse test and requires the reporting entity to consider Condition 2.

An investor's voting percentage may not be clear. As a result, the entity's underlying documents should be reviewed. In a limited partnership, a general partner may have 100% of the vote, and each limited partner may have 0% of the vote. In other entities, both parties may have to agree before certain major actions are undertaken (e.g., approval of operating budgets or issuing, refinancing debt). In these situations, we generally believe each party has 50% of the vote when evaluating Condition 1 of ASC 810-10-15-14(c).

Many entities have an investor that has disproportionately fewer voting rights than its economic interest would suggest because of the entity's profit- or loss-sharing formula, or because an investor has a variable interest other than its voting equity interest (e.g., subordinated debt, fee arrangement).

However, an entity is not a VIE solely because Condition 1 of ASC 810-10-15-14(c) has been met. For the entity to be a VIE, Condition 2 also must be met. That is, substantially all of the entity's activities must either involve or be conducted on behalf of the investor with disproportionately few voting rights, including its related parties and certain de facto agents.

---

**Illustration 7-48:    Determining whether voting rights are proportionate to economic rights**

**Example 1**

Partner A and Partner B contribute $66 and $34, respectively, in exchange for equity interests in a newly formed entity. Each party must approve major operating activities before those activities are undertaken. Profits and losses are allocated in proportion to each partner's capital balance.

**Analysis**

Partner A has 50% of the entity's voting rights but is entitled to 66% of its underlying economics. Therefore, Condition 2 of the anti-abuse clause must be evaluated to determine whether the entity is a VIE.

**Example 2**

Assume the same facts as Example 1, except that Partner B makes a loan to the entity, which increases its obligation to absorb the entity's expected losses to 54%.

**Analysis**

Partner B has 50% of the entity's voting rights but is obligated to absorb 54% of the entity's expected losses. Therefore, Condition 2 of the anti-abuse clause must be evaluated to determine whether the entity is a VIE.

---

**Question 7.16**    **In determining whether an investor has disproportionately fewer voting rights than its obligation to absorb expected losses or receive expected residual returns of the entity would suggest, should the comparison be based only on the rights and obligations of equity investments, or should all variable interests held by an investor be considered?**

ASC 810-10-15-14(c) requires that the anti-abuse clause be applied broadly to **all** interests held in a potential VIE to determine whether an investor has disproportionately few voting rights compared with its obligations to absorb expected losses or rights to receive expected residual returns. Accordingly, all variable interests held by an investor should be considered in determining whether the investor has disproportionately few voting rights in the entity.

---

**Illustration 7-49:    Variable interests to be considered when applying the anti-abuse clause**

A reporting entity holds a 10% equity ownership interest in an entity and also has provided debt financing to the entity such that, in the aggregate, it has provided 70% of the entity's total capitalization. The reporting entity's voting rights in the entity are proportionate to its 10% equity ownership interest. Substantially all of the entity's activities are conducted on behalf of the reporting entity.

**Analysis**

Because the reporting entity has an overall economic position in the entity equal to 70% of its capitalization (based on the aggregate of its combined debt and equity position), but has only a 10% voting interest, its obligation to absorb expected losses is disproportionate to its voting interest. Therefore, Condition 1 has been met. Also, substantially all of the entity's activities are conducted on behalf of the reporting entity, which has disproportionately few voting rights. Therefore, the entity is a VIE.

---

## 7.4.2    Condition 2: Substantially all of an entity's activities either involve or are conducted on behalf of an investor that has disproportionately few voting rights

The entity does not have enough equity to finance its activities without additional subordinated financial support.

The equity holders, as a group, lack the characteristics of a controlling financial interest.

The entity is structured with non-substantive voting rights (i.e., anti-abuse clause).

‣ An entity is a VIE if both of the following conditions are met:
  ‣ The voting rights of some investors are not proportional to their obligations to absorb the expected losses of the entity, their right to receive the expected residual returns or both.
  ‣ Substantially all of the entity's activities either involve or are conducted on behalf of an investor that has disproportionately few voting rights, including that investor's related parties and certain de facto agents.

We believe that any disproportionality between an investor's voting rights and its obligation to absorb the entity's expected losses or receive its expected residual returns requires a determination of whether Condition 2 of ASC 810-10-15-14(c) has been met.

Determining whether substantially all of the entity's activities either involve or are conducted on behalf of an investor, including the investor's related parties and certain de facto agents, will require judgment and will be based on a qualitative assessment of the applicable facts and circumstances. Although the amount of the entity's economics attributable to the investor with disproportionately few voting rights is a factor that should be considered, the anti-abuse test is not based solely on a quantitative analysis.

We believe the activities of the potential VIE should be compared with those of the variable interest holders in the entity. The nature of the entity's activities, the nature of each variable interest holder's activities exclusive of its investment in the entity, the rights and obligations of each variable interest holder and the role that each variable interest holder has in the entity's operations, among other factors, should be considered. If the activities of the entity involve or are conducted on behalf of the investor that holds disproportionately few voting rights, or on behalf of that investor's related parties or certain de facto agents, the entity is a VIE.

Factors that should be considered in determining whether the activities involve or are conducted on behalf of the investor[40] with disproportionately few voting rights include:

‣    Are the entity's operations substantially similar in nature to the activities of the investor with disproportionately few voting rights?

‣    Are the entity's operations more important to the investor with disproportionately few voting rights than the other variable interest holders?

‣    What decisions does the investor with disproportionately few voting rights participate in and to what extent?

‣    Are the majority of the entity's products or services bought from or sold to the investor with disproportionately few voting rights?

‣    Were substantially all of the entity's assets acquired from the investor with disproportionately few voting rights?

‣    Are employees of the investor with disproportionately few voting rights actively involved in managing the operations of the entity?

‣    What roles do the variable interest holders play in conducting the entity's operations?

‣    Do employees of the entity receive compensation tied to the stock or operating results of the investor with disproportionately few voting rights?

‣    Is the investor with disproportionately few voting rights obligated to fund operating losses of the entity, or is the entity economically dependent on the investor?

‣    Has the investor with disproportionately few voting rights outsourced certain of its activities to the entity, or vice versa?

‣    If the entity conducts research and development activities, does the investor with disproportionately few voting rights have the right to purchase any products or intangible assets resulting from the entity's activities?

‣    Has a significant portion of the entity's assets been leased to or from the investor with disproportionately few voting rights?

‣    Does the investor with disproportionately few voting rights have a call option to purchase the interests of the other investors in the entity? Fixed price and "in the money" call options are stronger indicators than fair value call options.

‣    Do the other investors in the entity have an option to put their interests to the investor with disproportionately few voting rights? Fixed price and "in the money" put options are stronger indicators than fair value put options.

Not all of these conditions must be present to conclude that the activities of the entity are conducted principally on behalf of the investor with disproportionately few voting rights. Determining whether substantially all of a potential VIE's activities involve or are conducted on behalf of an investor with disproportionately few voting rights, including that investor's related parties and certain de facto agents, requires the use of professional judgment after considering all the facts and circumstances.

---

[40]  For purposes of evaluating the factors listed, the term "investor" should be read to include the investor and the investor's related parties and certain de facto agents under ASC 810-10-25-43.