# EXHIBIT C

 **Viewpoint**

# 11.3 Accounts and notes payable

Publication date: 30 Apr 2022   (updated 30 Sep 2022)

**US Financial statement presentation guide 11.3**

Figure FSP 11-1 includes the items that are required by S-X 5-02(19)(a) to be stated separately on the balance sheet or disclosed in the footnotes. It also references the section in this guide where each item is discussed in more detail.

**Figure FSP 11-1**
S-X 5-02(19)(a) required balance sheet disclosures

| Amounts payable to | Section |
| --- | --- |
| Trade creditors | FSP 11.3.1 |
| Banks for borrowings | FSP 12 |
| Holders of commercial paper | FSP 12 |
| Factors or other financial institutions for borrowings | FSP 12 |
| Related parties | FSP 26 |
| Underwriters, promoters, and employees | FSP 11.3.2 |
| Others | FSP 11.3.3 |

## 11.3.1 Trade creditors

This caption typically represents amounts owed to suppliers of goods and services that a reporting entity consumes through operations. There are numerous considerations that a reporting entity should evaluate related to these payables, the most common of which are discussed in the following subtopics.

### 11.3.1.1 Bank and book overdrafts

Book overdrafts—representing outstanding checks in excess of funds on deposit—should be classified as liabilities at the balance sheet date. Bank overdrafts—representing the total of checks honored by the bank that exceed the amount of cash available in the reporting entity's account—result in the creation of a short-term loan.

See FSP 6.5.1.2 and FSP 6.5.1.1 for presentation and disclosure considerations related to book and bank overdrafts.

### 11.3.1.2 Classification of outstanding checks

Non-authoritative guidance included in AICPA Q&A Section 1100.08 indicates that outstanding checks should be presented as a reduction of cash. As a result, in practice, most preparers present a liability on the balance sheet equal to only the amount of outstanding checks in excess of available cash and disclose that such liability is a reinstatement of liabilities cleared in the bookkeeping process.

Example FSP 11-1 illustrates the classification of outstanding checks covered by funds on deposit.

**EXAMPLE FSP 11-1**

Offset outstanding checks against cash deposits

FSP Corp has three separate bank accounts with the same bank: a deposit account, a main account, and a disbursement account. The deposit account is used by the reporting entity to accumulate deposits from customers. At the end of each business day, any amounts in the deposit account are automatically swept into the main account. FSP Corp uses the disbursement account to write checks. Each day, the bank accumulates the total amount of the checks presented for payment and, pursuant to its account agreement with FSP Corp, sweeps an equal amount out of the main account into the disbursement account to cover the balance. According to the account agreement, the bank has a right to draw any amount from an account with a positive balance to cover an account with a negative balance. As of year-end, FSP Corp has a negative balance in its general ledger account for the disbursement account of $9 million (representing outstanding checks), a positive balance in its general ledger account for the main account of $8 million, and a zero balance in the deposit account.

How should FSP Corp present its cash accounts on its balance sheet?

*Analysis*

Because the bank has the ability to draw any amount from an account with a positive balance to cover an account with a negative balance, FSP Corp should offset the $8 million positive balance in the main account against the $9 million in outstanding checks (negative balance in the disbursement account). The net amount of $1 million should be reported as a current liability on FSP Corp's balance sheet.

## 11.3.1.3 Checks written but not released

Checks that have not been released by the end of the accounting period (i.e., not mailed or otherwise transmitted to the payee) should not be deducted from the cash balance (i.e., the related balances should still be reflected as cash and the related account payable or other liability).

## 11.3.1.4 Drafts payable

A draft is an order to pay a certain sum of money. It is signed by the drawer (e.g., an insurance company for a claim payment) and payable to order or bearer (e.g., an insurance policyholder). When the draft is presented to the drawee (i.e., the bank), it is paid only upon the approval of the drawer.

Drafts and checks have different legal characteristics. A check is payable on demand, whereas a draft must be approved for payment by the drawer before it is honored by the bank.

Drafts payable should be netted against the cash balance, similar to the treatment for outstanding checks. It is acceptable, however, for a reporting entity to present drafts payable gross as a liability if the total amount is disclosed either on the balance sheet or in a footnote. This approach recognizes that there is a legal distinction between a check and a draft. The policy election must be consistently applied.

## 11.3.1.5 Supplier finance programs

Supplier finance programs may also be referred to as reverse factoring, payables finance, or structured payables arrangements. A reporting entity (i.e., the buyer) uses these programs to provide its suppliers of goods or services/vendors access to payment from a third-party finance provider or intermediary in advance of an invoice due date originally agreed with the buyer. It is common in such arrangements for the buyer to confirm the amount and validity of invoices to the finance provider in advance of the early payment offer. Although not determinative, one indicator that a reporting entity may have a supplier finance program is the commitment to pay a third party (other than the supplier) for a confirmed invoice without offset, deduction, or any other ability to avoid payment.

In determining whether an entity has established a supplier finance program, all available evidence should be considered, including arrangements between (1) the reporting entity and the finance provider or intermediary and (2) the reporting entity and its suppliers whose invoices the entity has confirmed as valid.

***Balance sheet presentation***

Depending on the reporting entity's level of involvement and whether or not the supplier finance program represents a financing of the original obligation, the terms of the supplier finance program could cause the substance of the liability to

change from trade payable to debt. This change in classification could affect a reporting entity's leverage ratios, and possibly, its covenants.

The presentation of supplier finance programs is not addressed directly in authoritative literature. When entering into supplier finance programs, a reporting entity should weigh the evidence to determine whether the obligations in the program are more akin to a trade payable or debt. Program terms differ, and even similar programs in different markets or jurisdictions may be accounted for differently because of variations in industry norms and laws by jurisdiction.

When evaluating whether an obligation is more akin to a trade payable or debt, a reporting entity should consider:

- Are the terms of the payable typical for the specific reporting entity and industry? Said differently, would a supplier offer those terms to the reporting entity absent any other considerations?

- As a result of the supplier finance program, was the payable modified so significantly such that it should be considered a new arrangement?

Figure FSP 11-2 details factors a reporting entity should consider to determine whether an obligation in a supplier finance program should be presented as a trade payable or debt financing.

**Figure FSP 11-2**
Supplier finance programs—classification considerations

| Program terms | Indicates that the economic substance of the obligation could remain consistent with that of a trade payable | Indicates that the economic substance of the obligation could be more consistent with debt |
|---|---|---|
| What are each party's roles and responsibilities in the negotiations of the supplier finance program? | The reporting entity simply introduces the vendor and the financial institution/ intermediary. | The reporting entity is significantly involved in the negotiation of terms between its vendors and a financial institution/intermediary, or the reporting entity is a party to the arrangement. |
| Are credits still negotiated between the reporting entity and the vendor? | The reporting entity retains its right to negotiate with the vendor and its ability to realize negotiated credit memos. | The reporting entity does not retain its right to negotiate with the vendor and loses the ability to realize negotiated credit memos. |
| Is the program offered to a wide range of companies or by a wide range of vendors? Is vendor participation in the program voluntary? | The program is available to a broad range of vendors. While we do not believe that the arrangement needs to be offered to all of the reporting entity's vendors (or to all buyers of those suppliers), availability of a program to a broad range of vendors is a helpful indicator. | There are a limited group of vendors or buyers, or the program mandates that the vendor accept an early payment for an amount less than the invoice. |
| Has the financial institution obtained any new rights, such as the ability to decide which vendor invoices get paid? | The financial institution/ intermediary has not obtained any rights that the vendor did not have before the start of the program. | The arrangement results in the financial institution/ intermediary receiving new rights that the vendor did not have before the supplier finance program. |
| How are fees calculated when the reporting entity | The servicing fee paid to the buyer (if any) is in line | Servicing or other fees earned by the reporting |

| | | |
|---|---|---|
| uses a paying agent's accounts payable platform? | with a typical paying arrangement.<br>A servicing fee does not in and of itself change the nature of the transactions being serviced as long as it is in line with a typical paying arrangement. | entity are variable based on vendor participation. |
| Are the terms of the payables consistent with those that other buyers would obtain without a supplier finance program? | Invoice terms between the buyer and vendor are similar to those typically offered by vendors to other buyers without supplier finance programs. | Payment terms are extended beyond industry norms. |
| Is the purpose of the transaction in substance an effort by the reporting entity to finance trade payables by extending terms beyond industry norms? | The terms of the invoice are not changed or extended from the terms originally negotiated between the buyer and vendor. | Terms are extended or otherwise designed to allow the reporting entity to finance the payment contractually due to the vendor. |
| Is the reporting entity's parent jointly and severally liable for the obligation? | There is no parent guarantee, as parent guarantees are not typical of trade payables. However, if the obligation was already implicitly guaranteed, making it explicit via the supplier finance program, this may not, in and of itself, make the obligation debt if the guarantee is the only "debt-like" characteristic. Determination of whether an obligation was already implicitly guaranteed requires judgment. | The obligation was not already implicitly guaranteed, but a guarantee was made explicit via the supplier finance program. |
| Has the legal character of the obligations changed? | There are no changes in legal character. | There are changes to the obligation such that it is no longer consistent with a UCC-compliant trade payable. |

Notwithstanding these considerations, the presence of certain terms may suggest that the obligation is, in substance, debt. These include:

- An incremental increase in the price of the goods to compensate vendors who provide extended payment terms

- The original liability being extinguished

- Interest accruing on the balance prior to the due date (although penalties for non-payment may be imposed after that)

- The financial institution having the right to draw on the reporting entity's other accounts without its permission if the designated payment account has insufficient funds, if not part of the reporting entity's normal banking arrangement

- Altering the trade payable's seniority in the reporting entity's capital structure

- Requiring the reporting entity to post collateral on the trade payable

-

Default on invoice payment under the arrangement triggering a cross-default (other than a general debt obligation cross-default)

Balance sheet classification of the liability also impacts the statement of cash flows. See FSP 6.9.11 for discussion of the statement of cash flows classification.

Example FSP 11-2 illustrates the application of the accounts payable versus debt classification considerations.

**EXAMPLE FSP 11-2**
Supplier finance programs — accounts payable versus debt classification

FSP Corp and its financial institution ask certain of FSP Corp's vendors to enter into a new payment program. Under the payment program, the financial institution pays the vendors directly and participates in an early pay discount that the vendors offer for invoices paid within 15 days. FSP Corp is then obligated to pay the financial institution the agreed-upon amount at the invoice due date. The amount FSP Corp pays the financial institution at the due date is less than the full amount of the invoice because the financial institution has offered FSP Corp a portion of the early pay discount it receives from the vendor.

Should FSP Corp classify the payable to the financial institution as accounts payable?

*Analysis*

No. The arrangement between the financial institution and FSP Corp results in FSP Corp securing financing at a lower cost of funds than in the vendor's original invoice. FSP Corp received an early-pay discount for which it was not otherwise eligible. As such, FSP Corp should derecognize its trade account payable and record a new liability classified on its balance sheet as a borrowing from the lender.

Further, FSP Corp's statement of cash flows should reflect an operating cash outflow and financing cash inflow related to the affected trade payable balances, and a financing cash outflow upon payment to the financial institution and settlement of the obligation. See FSP 6.9.11 for discussion of the statement of cash flows classification of supplier finance programs.

---

***New guidance***

In September 2022, the FASB issued ASU 2022-04, *Disclosure of Supplier Finance Program Obligations*, which requires disclosures about supplier finance programs. While this standard does not address the accounting for or financial statement presentation of these arrangements, it requires specific disclosures intended to enhance transparency, such as key terms of the program, amounts outstanding, balance sheet presentation, and associated rollforward information. These disclosures are required for supplier finance programs, regardless of the financial statement presentation (i.e., as trade payables or as debt) of the related liabilities. Traditional paying agent arrangements discussed in FSP 11.3.1.6 are not in the scope of ASU 2022-04.

For all entities, the amendments are effective for fiscal years beginning after December 15, 2022, including interim periods with those fiscal years, except for the requirement to disclose rollforward information, which is effective for fiscal years beginning after December 15, 2023. Early adoption is permitted.

The amendments should be applied retrospectively to each period in which a balance sheet is presented, except for the amendment on rollforward information, which should be applied prospectively. During the fiscal year of adoption, the information on the key terms and balance sheet presentation, which are annual disclosure requirements, should also be disclosed in each interim period. For example, for a calendar year-end entity, disclosure of the amounts outstanding, key terms, and balance sheet presentation is required beginning in the first quarter 2023 financial statements. Disclosure of the rollforward information would first be required in the 2024 annual financial statements.

***Required disclosures after adoption of ASU 2022-04***

Reporting entities that use supplier finance programs must disclose sufficient information to enable users of financial statements to understand the nature and potential magnitude of the programs, activity during the period, and changes from period to period. There are both annual and interim disclosure requirements included in ASC 405-50-50-3 through ASC 405-50-50-4. If a reporting entity uses more than one supplier finance program, it may aggregate disclosures, but not to the extent that useful information is obscured by the aggregation of programs that have substantially different characteristics.

The following disclosures are required in annual periods.

- *Key terms of the program including, but not limited to:*
  - A general description of the payment terms, including payment timing and the basis for its determination
  - Assets pledged as security or other forms of guarantees provided for the committed payment to the finance provider or intermediary

See ASC 405-50-55-1 through 405-50-55-3 for an illustrative example of the disclosure of key terms.

Obligations confirmed as valid under the program:

- Amount outstanding that remains unpaid by the entity at the end of the reporting period and where those obligations are presented in the balance sheet (if there is more than one balance sheet line item, disclose the amount in each line item)

- Rollforward of the obligations that includes, at a minimum, all of the following:

  - Amount outstanding at the beginning of the reporting period

  - Amounts added to the program during the reporting period

  - Amounts settled during the reporting period

  - Amount outstanding at the end of the reporting period.

See ASC 405-50-55-4 through 405-50-55-5 for an illustrative example of the rollforward disclosure.

In interim periods, a reporting entity should disclose the amount of obligations confirmed as valid that remain outstanding at the end of the reporting period. Also, during the fiscal year of adoption, the information on the key terms and balance sheet presentation, which are annual disclosure requirements, should also be disclosed in each interim period.

## 11.3.1.6 Liabilities settled through paying agents

In some circumstances, a reporting entity may engage a financial institution to operate solely as a paying agent by entering into arrangements that allow for the financial institution to make payments on its behalf. In some instances, these arrangements may allow the reporting entity to participate in rebates or "rewards" programs based on transaction volume. Generally, a reporting entity settles the outstanding obligations to the paying agent within the same time period that the reporting entity would have settled the vendor payable, absent a paying agent.

Transaction types vary, and include:

- *P-cards*

  Employees of the reporting entity make small-dollar purchases, and the reporting entity owes the financial institution issuing the credit card directly. Generally, payment terms are 30–60 days from closure of the billing period, though in some cases, a higher volume of purchases may drive a shorter payment period.

- *e-payables*

  A reporting entity charges its trade payables to virtual credit cards, thus settling the obligations to the vendors and creating new obligations to financial institutions. Generally, e-payables allow for larger dollar purchases than p-cards, and are also generally payable 30 days after billing period closure, similar to standard credit card arrangements.

- *Clearing accounts*

  Vendors (often of health care companies) have access to a bank account in the reporting entity's name and can post charges directly to that account.

  In some circumstances, the use of these payment mechanisms may result in a change in the legal form of a reporting entity's liability because it pays a paying agent who had paid off and extinguished the reporting entity's obligation to a third-party vendor.

  Although the reporting entity may now be legally obligated to make payment to the financial institution, this arrangement may still be classified as a trade payable since the payable arose from normal operating purchases and no financing costs are

involved. Trade payable designation may still be acceptable if (1) payment is made quickly (within the month) and (2) the arrangement is more for convenience than financing. This may be true even if rebates are received from the card issuer based on the volume of use.

See FSP 6.9.1.3 for discussion of classification in the statement of cash flows when a paying agent is used.

## 11.3.2 Underwriters, promoters, and employees

S-X 5-02 requires reporting entities to separately present in the financial statements amounts payable to the following classes of individuals:

- Underwriters — Section 2(a)(11) of the 1933 Securities Act broadly defines the term "underwriter" as:

  **Excerpt from Section 2(a)(11) of 1933 Securities Act**

  The term ''underwriter'' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission.

- Promoters — Rule 405 of the 1933 Securities Act defines a "promoter" as:

  **Excerpt from Securities Act of 1933, Rule 405**

  (i) Any person who, acting alone or in conjunction with one or more other persons, directly or indirectly takes initiative in founding and organizing the business or enterprise of an issuer; or

  (ii) Any person who, in connection with the founding and organizing of the business or enterprise of an issuer, directly or indirectly receives in consideration of services or property, or both services and property, 10 percent or more of any class of securities of the issuer or 10 percent or more of the proceeds from the sale of any class of such securities. However, a person who receives such securities or proceeds either solely as underwriting commissions or solely in consideration of property shall not be deemed a promoter within the meaning of this paragraph if such person does not otherwise take part in founding and organizing the enterprise.

- Employees — The ASC Master Glossary defines an employee as an individual over whom a reporting entity can either exercise, or has the right to exercise, sufficient control to establish an employer-employee relationship

## 11.3.3 Accounts or notes payable to other parties

A reporting entity should report accounts or notes payable to other parties in addition to those discussed in FSP 11.3.1 through FSP 11.3.2. Others can include, but are not limited to, repurchase agreements. See FSP 22 for presentation and disclosure considerations related to repurchase agreements.

11.1 Accounts and notes payable

PwC. All rights reserved. PwC refers to the US member firm or one of its subsidiaries or affiliates, and may sometimes refer to the PwC network. Each member firm is a separate legal entity. Please see www.pwc.com/structure for further details. This content is for general information purposes only, and should not be used as a substitute for consultation with professional advisors.